The INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Appellant–Defendant,

v.

Joan DURHAM, Individually, and Joan Durham as Natural Parent and Guardian of Bernard L. Durham, a Minor, and Bernard L. Durham, Appellees–Plaintiffs.

No. 49A05–9912–CV–00531.

Court of Appeals of Indiana.

May 7, 2001.

Robert M. Baker III, Johnson, Smith, Pence & Heath, LLP, Indianapolis, IN, Attorney for Appellant.

Harry L. Gonso, Mary Nold Larimore, Ice Miller, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

The Indiana High School Athletic Association (IHSAA) appeals the trial court's issuance of a permanent injunction against the IHSAA's denial of full eligibility and a hardship exception for Bernard Durham (B.J.). The trial court found that the IHSAA's decision was arbitrary and capricious. Upon appeal, the IHSAA asserts that the trial court's findings are clearly erroneous, given the broad discretion afforded to its eligibility decisions. Because we agree that the IHSAA's decision to deny B.J. full eligibility and a hardship exception was arbitrary and capricious, we affirm the trial court.

### Facts and Procedural History

In the summer of 1999, B.J. transferred from Park Tudor High School (Park Tudor) to North Central High School (North Central). B.J. participated in varsity cross-country and track during his freshman and sophomore years at Park Tudor. B.J. had attended private school, either at Park Tudor or at St. Richard's School since second grade. B.J. has three brothers who also attended private schools.

During 1998, B.J.'s mother, Joan Durham, and her husband, Tim Durham, separated and initiated divorce proceedings.

Tim is not B.J.'s biological father. B.J.'s biological father lives in France and does not contribute to B.J.'s support. Around January or February of 1999, the time came to sign 1999–2000 re-enrollment contracts for B.J. and his three brothers in their private schools. At that time, Joan and Tim's divorce was not yet final. Joan decided not to sign the contracts because she could no longer afford the tuition to send her children to private schools.[1] She instead enrolled her sons including B.J. in the public school system where the family resided, Washington Township. B.J. enrolled in North Central.

In the fall of 1999, an IHSAA transfer form was completed on behalf of B.J. so that he could continue participating in sports at North Central. Joan indicated on the form that the recent divorce created such a financial burden on her that she could not afford to keep B.J. enrolled at a private school. Joan also provided the IHSAA with financial information and court filings to support the listed reason for B.J.'s transfer.

In 1997, before the divorce, the taxable income of the family was $405,590. However, after the separation, Joan's taxable income was $134,620, resulting in a sixty-seven percent drop in the family income. However, Joan's substantial debt and regular expenses greatly reduce the availability of this income. Further, Joan does not have significant assets that she can access to assist her in reducing her debt or paying her expenses.

Specifically, there are two mortgages on the family home, the first one is for $460,000, and the second mortgage is for $130,000. Thus, although the house's appraisal value is somewhere between $580,000 and $680,000, any proceeds from a sale of this home would be severely reduced by these mortgages. There was also a tax lien on the house at the time Joan had to make the decision of whether or not to re-enroll her children in private schools. This tax lien also prevented Joan from selling the family home. Joan's yearly fixed bills, including the mortgage and utilities, total over $96,000. In addition, charges at Park Tudor total $11,895 for tuition, fees, and books per child. Joan also has many other regular expenses, including credit cards, insurance, health care, camp, piano and tennis lessons, tutors, and household expenses such as groceries and landscaping. Further, the child support paid by Tim for his one child is not received in cash, as it is applied to paying off the tax lien on the house. Although she owns stock in the company for which she works, she has borrowed against that to keep her house. In fact, she receives temporary assistance from her parents in exchange for some work that she does for them to enable her to stay in the family home and continue to keep up payments on her debt.

Park Tudor, as the sending school, also had to offer the reason for B.J.'s transfer. Initially, Park Tudor had included in the transfer form that B.J. told coaches, administrators, and other students that "he wanted to go to a better track/c.c. [cross-country] program and that is why he is leaving." Record at 102. B.J. denied making such statements. However, Park Tudor changed its position after speaking with its athletic director who had subsequently learned that B.J.'s family situation prompted the transfer. Park Tudor recommended that B.J. be awarded full eligibility to compete in sports at North Central.

---

1. Eventually, one brother, who was Tim's only biological son, continued attending private school because Tim was obligated to pay his tuition. Further, another one of B.J.'s brothers went to France to live with his father.

On August 25, 1999, IHSAA Assistant Commissioner Sandy Searcy granted B.J. only limited eligibility, which prohibited B.J. from competing at the varsity level, and denied B.J. a hardship exception.

The Durhams, through North Central's athletic director, appealed that decision to the IHSAA Executive Committee. The Durhams were led to believe that the question of whether B.J. transferred for athletically motivated reasons would not be an issue discussed at the hearing scheduled before the Executive Committee. A hearing was held, at which B.J., Joan, and the athletic directors from both schools testified. Evidence was presented that B.J. had been running with the junior varsity cross-country team at North Central, and that if he enjoyed full eligibility, B.J. would be one of the school's top runners. Joan testified that B.J. had suffered a great deal as a result of the IHSAA's decision. She relayed that he had problems with anxiety in the past, and that his running had helped him through this difficult time for his family. B.J. testified that he did not want to leave Park Tudor, and that he refused to explain why he was leaving when asked about the move at Park Tudor. Assistant Commissioner Searcy also testified that she was convinced that the change in the Durham's financial circumstances was permanent and substantial although not beyond their control. Park Tudor's athletic director, referring to Park Tudor's initial comment on B.J.'s transfer form, stated that the reference was the result of bantering between athletes and coaches due to the rivalry with North Central.

The Executive Committee agreed with Assistant Commissioner Searcy's decision, denying B.J. full eligibility and issuing findings. The Executive Committee concluded that B.J. transferred schools without a change in residence and failed to fit within any of the criteria of the Transfer Rule [2] to gain full eligibility. Further, the Committee determined that B.J. did not meet the necessary conditions to gain full eligibility through the hardship exception to the Transfer Rule. Even though Searcy had testified that there had been a permanent and substantial change in financial circumstances, the IHSAA Executive Committee reasoned that B.J. failed to produce sufficient proof that the reason for transfer was beyond the control of him and his family. The IHSAA also noted that some evidence existed that the transfer may have been motivated by athletic reasons, even though the Durhams did not know that this was an issue before the Executive Committee.

The Durhams sought a temporary restraining order in court. On September 17, 1999, the trial court granted the temporary restraining order. On September 20, 1999, B.J. filed the complaint asking that the IHSAA's decision be overturned and that a permanent injunction be issued to allow B.J. to run cross-country on North Central's varsity team. On October 15, 1999, the trial court held a hearing on the request for injunctive relief. The court allowed the administrative record to be supplemented, but did not conduct a new evidentiary hearing.

On October 22, 1999, the court granted the permanent injunction, and issued findings and conclusions. The court found that the IHSAA's findings were arbitrary and capricious. The court concluded that B.J. had met the conditions of the hardship exception to the Transfer Rule by showing a significant change in financial circumstances caused by his mother's recent divorce. The trial court noted that Joan's total expenses before private tuition are

2. *See* IHSAA Manual, Rule 19.

about equal to her income. Moreover, the court reasoned that B.J. did not need to prove poverty status to fall within the confines of the Hardship Rule, as the IHSAA does not have an income test. The court instead determined that B.J. did meet the requirements listed in the Hardship Rule, concluding that allowing B.J. to enjoy full athletic eligibility would not violate the spirit of the Transfer Rule. The court noted that the only possible evidence of athletic motivation, the bantering among students and coaches, was hearsay within hearsay. Further, this evidence was not confirmed by personal knowledge, but rather was an assumption made due to a rivalry with North Central. The IHSAA appealed the trial court's findings. Initially, this court stayed the appeal so that the trial court could decide the issue of attorney fees. The trial court denied the Durhams' request for attorney fees, and the stay was lifted.

**Discussion and Decision**

Upon appeal, the IHSAA asserts that the trial court applied the standard of review over its decisions improperly. The IHSAA contends that its rulings are entitled to great deference and should be reversed only if they are willful and unreasonable without consideration of the facts and circumstances in the case. In this case, the IHSAA argues that the trial court merely reweighed the evidence and substituted its own decision. The Durhams insist that this case is moot because the time for the injunction has expired, and there are no outstanding unresolved issues between these parties. Alternatively, the Durhams counter that the IHSAA's conduct is not free from judicial review, and the IHSAA violated its own rules in denying B.J. a hardship exception.

*I. IHSAA—Background and Rules*

The IHSAA is a voluntary association designed to regulate interschool athletic competition. It establishes standards for eligibility, competition, and sportsmanship. For each school year, the IHSAA publishes a manual containing its Articles of Incorporation and By–Laws. This manual contains specific rules regarding eligibility. The rule in question in this case is Rule 19, known as the Transfer Rule. The Transfer Rule guides athletic eligibility when a student moves to a new school district. Rule 19–4 provides that a student will be ineligible for 365 days if he or she transfers schools for "primarily athletic reasons." Further, Rule 19–6.2 gives the IHSAA the authority to grant limited eligibility to a student who transfers to another school without a corresponding change of residence by his or her parent(s)/guardian(s). However, if one or more of the criteria under Rule 19–6.1 are met, then a student may enjoy full and immediate eligibility, even without a change of residence by his or her parent(s)/guardian(s).

If none of the criteria in Rule 19–6.1 are met, then a student must fall within the hardship exception to the Transfer Rule to gain full and immediate eligibility. Rule 17.8, entitled "Hardship" grants the authority to set aside any rule, including the Transfer Rule, if certain conditions are met. In particular, Rule 17–8.1 lists these three conditions:

a. Strict enforcement of the Rule in the particular case will not serve to accomplish the purpose of the Rule;

b. The spirit of the Rule has not been violated; and

c. There exists in the particular case circumstances showing an undue hardship that would result from enforcement of the Rule.

Further, among those situations to receive general consideration for a hardship exception is the following: "a change in financial condition of the student or a student's family may be considered a hard-

ship, however, such conditions or changes in conditions must be permanent, substantial and significantly beyond the control of the student or the student's family." IHSAA Manual, Rule 17–8.4.

When a student moves to a new school district, an investigation and a transfer report must be completed if athletic eligibility at the new school is desired. Included in this report are forms filled out by the sending school, the receiving school, and the student and/or the student's parent(s)/guardian(s). The report must include the relevant circumstances and documents and recommendations regarding immediate eligibility from both schools.

## II.  Mootness

Initially, the Durhams assert that the IHSAA's appeal should be denied because the case is moot. The Durhams contend that there are no outstanding issues between the parties because the injunction has been lifted, the issue of attorney fees has been decided, and North Central did not win any State titles with B.J.'s participation.

However, the IHSAA replies that the problem with the majority of litigation surrounding eligibility decisions is that the injunction granted by the trial court expires before the matter has been fully litigated and appealed. The IHSAA also contends that the case is not moot because its Restitution Rule[3] allows the IHSAA to make the school forfeit victories, team awards, and funds received from a tournament if it has been determined that an ineligible student athlete has competed for that school. Alternatively, the IHSAA argues that even if the issues have been decided in this case, this court should hear the case because it involves questions of public interest.

■■ An issue becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. *City of Huntingburg v. Phoenix Natural Res., Inc.*, 625 N.E.2d 472, 474 (Ind.Ct.App.1993). When the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions and the court will not retain jurisdiction to decide them. *Plumlee v. Monroe Guar. Ins. Co.*, 655 N.E.2d 350, 358 (Ind.Ct.App.1995), *trans. denied.* An actual controversy must exist at all stages of the appellate review, and if a case becomes moot at any stage, then the case is

---

**3.** The Restitution Rule, Rule 17–6 of the IHSAA By-laws, reads:

> If a student is ineligible according to Association Rules but is permitted to participate in interschool competition contrary to Association Rules but in accordance with the terms of a court restraining order or injunction against the student's school and/or the Association and the injunction is subsequently voluntarily vacated, stayed, or reversed or it is finally determined by the court that injunctive relief is not or was not justified, any one or more of the following action(s) against such school in the interest of restitution and fairness to competing schools shall be taken:
> a.  Require individual or team records and performances achieved during partic-
> ipation by such ineligible student be vacated or stricken;
> b.  Require team victories be forfeited to opponents;
> c.  Require team or individual awards earned be returned to the Association; and/or
> d.  If the school has received or would receive any funds from an Association tournament series in which the ineligible individual has participated, require that the school forfeit its share of net receipts from such competition, and if said receipts have not been distributed, authorize the withholding of such receipts by the Association.

remanded with instructions to dismiss. *Jordan v. IHSAA,* 16 F.3d 785, 787 (7th Cir.1994).

The Durhams insist that the IHSAA failed to assert evidence that there is a live controversy. The evidence about how the Restitution Rule may create a live controversy was introduced only through the Appendix to the IHSAA's Reply Brief. The Durhams filed a Motion to Strike the Appendix to the IHSAA's Reply Brief. The IHSAA filed a response, and the Durhams have asked for leave to file a reply. Further, the IHSAA has filed a surreply to the motion.

These motions focus on the IHSAA's attachment of an affidavit given by Blake Ress, the IHSAA Commissioner, to its reply brief. The Durhams assert that since the affidavit was not part of the trial record and is not part of the record on appeal, the court should not consider the appendix. The IHSAA failed to ask for leave to supplement the record, and the appendix does not include verification under Ind. Appellate Rule 50 that the contents of the appendix are accurate and a part of the appellate record.

The IHSAA counters that the affidavit was included to address the Durham's argument in their brief that the case was moot. The IHSAA relies upon *Kieselbach v. Feuer,* 183 Ind. 582, 109 N.E. 842, 843 (1915), which stands for the proposition that "[a]n appellate court may receive proof or take notice of facts appearing outside the record for the purpose of determining the moot character of a question presented to it." The IHSAA also contends that the Durhams have misapplied the appellate rules because it is not seeking to modify or correct the record, but instead to supplement it. Alternatively,

the IHSAA has petitioned the trial court to certify the appendix.

The Durhams respond that the IHSAA is trying to add new evidence to cure deficiencies in the trial court record, rather than modify it to make the record accurate. Specifically, the Durhams contend that because the trial record failed to discuss the IHSAA's Restitution Rule,[4] the IHSAA is now attempting to bring it into the record to avoid the doctrine of mootness. The Durhams also cite Ind. Appellate Rule 32, to assert that the trial court does not have jurisdiction over this matter. App. R. 32 provides that although the trial court initially has jurisdiction over correcting and modifying the record, the Court of Appeals acquires jurisdiction over attempts to modify the record after the reply brief has been filed in the appeal.

The affidavit of Commissioner Ress contains specific information about B.J.'s participation on North Central athletic teams during the time the injunction was in place. The affidavit details B.J.'s placement in tournaments and competitions, and discusses how North Central, as a team, would have fared without B.J.'s participation. The purpose of including this information is to prove that there is a live controversy between these parties because the Restitution Rule would require North Central to forfeit its team points earned by B.J. in competitions. Under the Rule, B.J. would also have to forfeit individual awards. The affidavit provides the only evidence in the record that B.J. earned individual ribbons or awards and that North Central placed higher with B.J.'s participation.

Regardless of whether we consider the affidavit, an exception to the mootness doctrine applies. The IHSAA relies upon the exception that an otherwise moot case may

---

4. *See* IHSAA Manual, Rule 17–6.

be decided on the merits if the case involves a question of great public interest. Indiana courts recognize that a moot case can be reviewed under a public interest exception when it involves questions of great public importance. *Union Tp. School Corp. v. State ex rel. Joyce,* 706 N.E.2d 183, 187 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* Although Indiana does not require that the issue be capable of repetition, cases falling into the public interest exception usually involve issues that are likely to recur. *Id.*

■ The IHSAA argues that this exception applies to the instant case because the issue involves children and education, matters that are considered of great public concern, and our court has previously held that a challenge to an IHSAA eligibility rule is an issue of substantial public interest. *See IHSAA v. Raike,* 164 Ind.App. 169, 329 N.E.2d 66, 71 n. 3 (1975). We agree.

While at first glance high school athletics may not seem to be of great public importance, according to the IHSAA, over 160,000 students statewide participate in sports under the IHSAA eligibility rules. Thus, this issue touches many in our state. Further, the issue of eligibility when a student transfers schools has arisen several times and has been the subject of much litigation. *See also IHSAA v. Carlberg,* 694 N.E.2d 222, 228 (Ind.1997), *reh'g denied* (recognizing the integral role athletics play in our state constitutionally-mandated system of education). Also, the specific issue of a student transferring schools after his or her parents' divorce is likely to recur. Therefore, we need not reach the issue of whether the Motion to Strike the Appendix to the Appellant's Reply Brief should be granted. The public interest exception to the mootness doctrine applies to this case, allowing us to decide the merits.

### III. Were the Trial Court's Findings Clearly Erroneous?

#### A. Our Standard of Review

■ The IHSAA asserts that the trial court's findings were clearly erroneous. In this case, the trial court issued an injunction to prevent the IHSAA from enforcing its ruling against B.J. When we review an injunction, we apply a deferential standard of review. *IHSAA v. Martin,* 731 N.E.2d 1, 5 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* The grant or denial of an injunction is discretionary, and we will not reverse unless the trial court's action was arbitrary or constituted a clear abuse of discretion. *Id.* (citing *Ind. State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.,* 637 N.E.2d 1306, 1311 (Ind.Ct. App.1994), *reh'g denied* ). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law. *Id.*

■ When the trial court granted the injunction in this case, it issued findings of fact and conclusions. Thus, to determine if the trial court abused its discretion, we must review these findings and conclusions. *Id.* Our review is two-tiered. *Wallace v. Meadow Acres Manufactured Hous., Inc.,* 730 N.E.2d 809, 812 (Ind.Ct. App.2000), *trans. denied.* First, we must determine whether the evidence supports the findings, and then, whether the findings support the judgment. *Id.* We will reverse a trial court's findings only if they are clearly erroneous. *Id.* at 813. The findings are erroneous only when the record leaves us with a firm conviction that a mistake has been made. *Id.*

#### B. Did the Trial Court Fail to Apply the Correct Standard of Review Governing IHSAA Decisions?

The IHSAA argues that the trial court failed to apply the deferential standard of

review afforded to its administrative rulings in granting the Durham's request for a permanent injunction.

▮ In *Carlberg,* 694 N.E.2d 222, our supreme court delineated how a trial court should review an administrative ruling made by the IHSAA. Although the IHSAA is a voluntary association, the court held that student challenges to IHSAA decisions are subject to judicial review. *Id.* at 230. The court reasoned that student athletes in public schools do not voluntarily subject themselves to IHSAA rules, and students have no voice in rules and leadership of the IHSAA. *Id.* The court then determined that IHSAA decisions are analogous to government agency decisions and, hence, adopted the "arbitrary and capricious" standard of review used when courts review government agency action. *Id.* at 231. The arbitrary and capricious standard of review is narrow, and a court may not substitute its judgment for the judgment of the IHSAA. *Id.* at 233. "The rule or decision will be found to be arbitrary and capricious 'only where it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.'" *Id.* (quoting *Dep't of Natural Res. v. Ind. Coal Council, Inc.,* 542 N.E.2d 1000, 1007 (Ind.1989), *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990)).

▮ In particular, the IHSAA takes issue with the trial court's holding that because B.J. met all of the criteria for the hardship exception, the IHSAA erred in denying him one. The IHSAA contends that even if B.J. would have met all of the criteria listed in the Hardship Rule, Rule 17–8.1, he is not entitled to mandatory relief. Rather, the IHSAA maintains that relief under the Hardship Rule is a matter of grace. In other words, the IHSAA has the discretion of whether to grant a hardship exception even if the Durhams proved that 1) strict enforcement of the Transfer Rule will not serve to accomplish the purpose of the Rule, 2) the spirit of the Transfer Rule has not been violated, and 3) an undue hardship would result if the Transfer Rule was enforced. The IHSAA bases this proposition upon a recent unpublished decision in federal court, *Pearson v. IHSAA,* No. IP 99–1857–C–T/G, 2000 WL 1030616 (S.D.Ind. February 22, 2000), where the court acknowledged the IHSAA's broad discretion.[5] *See Appendix to the Appellant's Brief A–3.* The court in *Pearson* stated that the IHSAA was not required to grant a hardship exception even if all conditions of the hardship rule are met. *Appendix A–3* at 52.

However, the IHSAA's position leaves its administrative decisions denying a hardship exception free from judicial review of any sort. While the text of the Hardship Rule states that the IHSAA "shall have the authority to set aside the effect of any Rule," the IHSAA's stance that it can deny a hardship exception even when the student meets the listed criteria implies both that it may have no ascertainable standards for granting or denying a hardship and that its hardship determinations are free from judicial review. IHSAA Manual, Rule 17–8.1. If the IHSAA is truly analogous to a governmental agency, then it must also establish standards on which to base its decisions.

Our supreme court in *Carlberg,* established the appropriate standard of review

5. We note that unpublished trial court decisions do not serve as precedent for this case and may only be considered for their persuasive value. *See Ind. Dep't of Natural Res. v. United Minerals, Inc.,* 686 N.E.2d 851, 857 (Ind.Ct.App.1997), *trans. denied.*

for IHSAA decisions in no uncertain terms. To reiterate, the *Carlberg* court stated that an IHSAA decision is arbitrary and capricious if it is "willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion." 694 N.E.2d at 233 (citation omitted). The IHSAA's suggestion that the Hardship Rule is entitled to an increasingly narrow standard of judicial review flies in the face of the *Carlberg* decision. In *Carlberg,* the supreme court upheld the IHSAA's Transfer Rule in part because there are provisions in place to lessen the severity of the rule. *Id.* at 233. The court reasoned that granting immediate and full eligibility either under the listed exceptions to the Transfer Rule or under the Hardship Rule and granting limited eligibility at the junior varsity or freshman level serves to balance the possible harsh effects of the Transfer Rule. *Id.* If we accepted the IHSAA's assertion that its decisions to deny a hardship exception fall under a more stringent standard of review than the arbitrary and capricious standard enunciated in *Carlberg,* then we would be taking away one of the underpinnings of that case.

■ Thus, we hold that trial courts may determine whether the denial of a hardship exception in a particular case was the result of arbitrary and capricious action by the IHSAA. In this case, the trial court did not fail to give weight to the IHSAA's broad discretion, as the IHSAA alleges. Rather, in rendering its decision that the IHSAA acted arbitrarily and capriciously, the trial court looked at the IHSAA's particular decision with respect to B.J., applied the appropriate standard, and concluded that the IHSAA's conduct rose to the level of willful and unreasonable decisionmaking that was in disregard of the facts and circumstances before it. For this, the trial court was well within its discretion.

## C. Were the IHSAA's Findings Clearly Erroneous?

■ Finally, the IHSAA asserts that even if the trial court used the appropriate standard of review governing its decisions, the trial court's findings were clearly erroneous. The IHSAA asserts that the evidence, as adduced in its written findings, supports its denial of full eligibility and a hardship exception.

In particular, the IHSAA asserts that some evidence existed that B.J. transferred for athletically motivated reasons. It points to the bantering about North Central having a better cross-country and track program. The trial court concluded that this was "hearsay within hearsay" and was not substantial evidence. The IHSAA counters that hearsay is admissible during administrative proceedings, and can be found to be substantial evidence of probative value. *See C.T.S. Corp. v. Schoulton,* 270 Ind. 34, 383 N.E.2d 293, 296 (1978); *Kriss v. Brown,* 180 Ind.App. 594, 390 N.E.2d 193, 197 (1979). The IHSAA also contends that the Durhams failed to establish that the purpose of the Transfer Rule would not be served by denying B.J. a hardship exception due to this evidence of "school jumping."

Here, the trial court did not abuse its discretion in holding that the IHSAA's conclusion that there was some evidence supporting that B.J. transferred for athletic reasons was arbitrary and capricious. Although hearsay may be admissible in administrative proceedings, this evidence of bantering was based upon Park Tudor's mistaken assumption that B.J. was transferring for athletic reasons. As soon as Park Tudor officials learned of the Durhams' circumstances, the transfer report

was corrected to reflect that they recommended that B.J. be given full eligibility under a hardship exception. Thus, any evidence of athletic motivation was recanted by Park Tudor. Further, Park Tudor's retraction is against their own interest, as it would seem that Park Tudor would be interested in not having B.J. compete against it due to its rivalry with North Central. Despite this, Park Tudor supported B.J.'s pursuit of a hardship exception.

Additionally, the Durhams were led to believe that athletic motivation would not be an issue in B.J.'s case. It is unfortunate that the IHSAA listed athletic motivation as a reason for transfer even though little or no evidence supports it. This practice was denounced in *Martin*, 731 N.E.2d at 11, which noted that the IHSAA uses the possibility of an athletically-motivated transfer, although admittedly not primarily athletically motivated, as a "poison pill" to keep students from receiving a hardship exception even if there is no substantial evidence to that effect. In the instant case, the trial court recognized this practice and found no evidence in the record to support the IHSAA's conclusion that athletic motivation played a role in B.J.'s transfer. Thus, the trial court's findings with respect to athletic motivation were not clearly erroneous.

■ Further, the IHSAA argues that B.J. did not establish undue hardship because he failed to show that his family's circumstances were beyond his or his family's control and that he could not afford to attend private school. The IHSAA contends that the trial court merely reweighed the evidence of the family's finances, and that the Durhams still enjoyed a high standard of living. The IHSAA concluded that the decision to send B.J. to North Central was a choice.

Rule 17–8.1, the general section of the Hardship Rule, states that the IHSAA may grant a hardship exception if 1) strict enforcement of the rule in the particular case will not serve to accomplish the purpose of the rule; 2) the spirit of the rule has not been violated; and 3) there exists in the particular case circumstances showing an undue hardship that would result from enforcement of the rule. Thereafter, specific circumstances are listed as candidates for hardship exceptions. One such circumstance that may be considered a hardship is a change in financial condition of the student or a student's family if the change is permanent, substantial, and significantly beyond the control of the athlete or the athlete's family.

The Seventh Circuit Court of Appeals considered this issue in *Crane v. IHSAA*, 975 F.2d 1315 (7th Cir.1992), and held that the IHSAA's denial of full eligibility was arbitrary and capricious where a student whose parents were divorced had transferred schools after a change in custody. *Id.* at 1325. The IHSAA has concluded that the student failed to prove that the move was beyond his control, as the change in custody occurred after Crane had some discipline problems and trouble with his grades in school. The Seventh Circuit, finding that this decision was arbitrary and capricious, reasoned that the IHSAA had ignored the plain language of its rules and instead used "rambling rationalizations" to come to a "pre-ordained result." *Id.* at 1323, 1325. The court noted that the IHSAA changes its interpretation of its rules depending upon the situation before it. *Id.* at 1325.

We also addressed this issue in *IHSAA v. Avant*, 650 N.E.2d 1164 (Ind.Ct.App. 1995). In *Avant*, we held that the IHSAA's denial of a hardship exception was supported by the evidence. *Id.* at 1169. Avant transferred from a private to a public school, and Avant's enrollment at

a private school created a financial hardship on the family. However, the family's financial situation had not changed, and there was also evidence that Avant had disagreements with his basketball coach. Further, the family's financial situation was never listed on the transfer report. Thus, we concluded that the IHSAA's decision to deny Avant a hardship exception was not arbitrary and capricious. *Id.*

Unlike *Avant,* in this case there was a change in the Durhams' family finances due to the divorce, and this change was documented in the transfer report submitted to the IHSAA. This change was caused by something beyond their control, Joan's recent divorce. Included in the specific list of situations receiving consideration for a hardship exception is a substantial and permanent change in financial condition of the student or the student's family significantly beyond the control of the student or the student's family. With the evidence submitted by Joan in the IHSAA administrative proceedings regarding her recent divorce and family's change in finances, no reasonable and honest person could conclude that the Durhams have not met this specific consideration listed within the Hardship Rule.

The trial court in the case before us found that the IHSAA ignored its own rules and instead interjected a condition of undue hardship not found in its rules that the Durhams prove their poverty before B.J. be given a hardship exception. We agree.

Contrary to IHSAA's assertion, the Hardship Rule does not read that an athlete's family must prove that it is a hardship case. In fact, financial hardship or poverty is not contained within the change in financial condition provision or the Hardship Rule generally. Instead, the "hardship" referred to in the Hardship Rule focuses on the hardship faced by the student athlete if the rule is strictly enforced. In this case, B.J. would face a hardship if he had to run at the junior varsity level because through no fault of his own and without any athletic motivation, B.J. was forced to transfer schools because of a substantial and permanent change in his family's financial condition. Just as in *Crane,* the IHSAA is attempting to adjust its interpretation of the Hardship Rule to meet the particulars of this case.

Even if we were to read a financial hardship requirement into the Hardship Rule, the Durhams would meet such a condition. The evidence in the record is undisputed that Joan had a significant amount of debt and her income had decreased by sixty-seven percent as a result of the divorce. At first glance, Joan's taxable income of $134,620 may not appear to suggest a family in financial hardship. However, a closer look reveals that Joan's monthly expenses are about equal to her monthly income. Joan's mortgage and utilities total $96,000 yearly, and she has many other regular expenses including health care, insurance, and various household expenses. Joan also has no assets that she could access to alleviate her financial burdens. Although Joan may be able to sell her house, she would net very little in proceeds after her mortgage debt was satisfied. Further, Joan would like to keep her children in the family home to avoid more disruption in their lives, in light of the divorce. The IHSAA should not be in the business of second-guessing personal financial decisions, but should accept the circumstances as they are.

Given the evidence in this case, the trial court did not abuse its discretion in overturning the IHSAA's denial of full eligibility and refusal to grant a hardship exception. While it may be true that in other cases, *see IHSAA v. Vasario,* 726 N.E.2d 325, 333 (Ind.Ct.App.2000) and *Avant,* 650 N.E.2d at 1169, we have recognized the IHSAA's broad discretion in refusing to

grant a student a hardship exception, this discretion is not unreviewable and is subject to the arbitrary and capricious standard upon review. The evidence in this case overwhelmingly leads to the conclusion that the reasons the IHSAA created the Transfer Rule, deterrence of athletic recruiting and equality in competition, would not be served by denying B.J. a hardship exception. The trial court did not simply reweigh the evidence and substitute its opinion, but instead found that the IHSAA ignored the facts and circumstances before it in rendering its decision. No reasonable and honest person would have concluded that B.J. should be denied a hardship exception in this case. This case embodies the reason the Hardship Rule was created. Although the IHSAA contends that its decisions are virtually unreviewable, a court does have the discretion to identify arbitrary and capricious conduct. The trial court in this case properly identified arbitrary and capricious action by the IHSAA.

Judgment affirmed.

NAJAM and KIRSCH, JJ., concur.