

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of: L.S., C.S., and W.S. (Minor Children in Need of Services); <br><br> J.S. (Father), <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | August 25, 2017 <br><br> Court of Appeals Case No. 79A02-1705-JC-1042 <br><br> Appeal from the Tippecanoe Superior Court <br><br> The Honorable Faith A. Graham, Judge <br><br> Trial Court Cause No. 79D03-1611-JC-322 |

**Najam, Judge.**

## Statement of the Case

[1]     J.S. ("Father") appeals the trial court's denial of the Department of Child

Services' ("DCS") petition in which DCS alleged that Father's children, L.S.,

C.S., and W.S. (collectively "the Children"), are children in need of services ("CHINS"). Father presents five issues for our review, which we consolidate and restate as the following three issues:

1. Whether the trial court erred when it denied Father's requests for supervised visits with the Children.

2. Whether the trial court violated Father's right to due process when it conducted the CHINS fact-finding hearing.

3. Whether the trial court clearly erred when it denied the CHINS petition.

[2] We affirm.

## Facts and Procedural History

[3] Father and S.S. ("Mother") married and had three children together: L.S., born October 14, 2005; C.S., born January 27, 2008; and W.S., born November 5, 2009. In 2014, after DCS received a report of Father's "violence against Mother," the trial court adjudicated the Children to be CHINS. Appellant's App. Vol. 2 at 46. After that CHINS case was closed, the parents continued marital counseling, and they continued counseling and medication for L.S., who had been diagnosed with Disruptive Mood Disregulation Disorder ("DMDD") and Attention Deficit Disorder ("ADD"). At some point, Mother filed a petition for dissolution of the marriage, but she later dismissed her petition.

[4]     Then, on October 28, 2016,

> law enforcement responded to the family home after a 911 call
> regarding a domestic violence incident in the presence of the
> children. After initial hesitation, Mother cooperated with law
> enforcement by answering questions and providing information.
> DCS also conducted an investigation into the circumstances.
> Mother report[ed] Father had "belted" Mother back before
> grabbing and wrestling [L.S.] to the ground where Father held
> her down. Mother also reported Father held her by the neck
> against the wall screaming very loudly in her ear. Mother
> disclosed a history of Father exhibiting controlling and
> manipulative behavior but assert[ed] past incidents ha[d] not
> included physical aggression to th[at] extent. Father report[ed]
> [L.S.] attempted to unilaterally "hijack" a planned family trip to
> Chicago. Father spank[ed] [L.S.] with a belt after [L.S.] struck
> Father in the head with a suitcase.

Appellant's App. at 77. After investigating the incident on October 28, DCS filed a petition alleging that the Children were CHINS. And on November 15, 2016, a trial court issued a protection order that restrained Father "from any contact" with Mother or the Children. Protection Order at 1.[1]

[5]     The trial court held a fact-finding hearing on the CHINS petition over the course of four days from January 12 to April 21, 2017. On April 24, the court issued its order denying the petition, and it found and concluded in relevant part as follows:

---

[1] Father did not include in his appendix a copy of the protection order. We obtained a copy of the order from Odyssey and take judicial notice of it. The order expires on November 2, 2018.

10. Mother filed a Petition for Dissolution of Marriage . . . on November 15, 2016. A Provisional Order issued January 3, 2017, and modified March 29, 2017, awards Mother possession and use of the marital residence. *Matters of custody, parenting time and support were referred to Tippecanoe Superior Court II pending the conclusion of the CHINS proceeding.*

* * *

12. The State of Indiana filed charges against Father for Invasion of Privacy and a criminal case is pending . . . .

13. Mother admits she has not continued her own individual counseling since the prior CHINS case closed. Mother has a plan for appropriate alternative housing in the event Mother and the [C]hildren are unable to continue residing in the marital residence. Mother gained employment as a substitute teacher and is renewing her teaching license for future employment.

14. Father reports residing in his van or at a homeless shelter. Father is seeking housing assistance through Lafayette Transitional Housing. Father's employment was terminated.

15. Father initially admitted that [L.S.] is a Child in Need of Services. At the conclusion of the Fact Finding hearings, Father testified that[,] without an adjudication, Father would be unable to gain access to the [C]hildren and Mother would be able to succeed with a strategy for adoption.

16. Both parents indicate [L.S.] was previously diagnosed with [DMDD and ADD] by Laura Hawkins around the Summer of 2015. Both parents indicate [L.S.] was prescribed medication which improved [L.S.'s] behavior.

17. Father asserts Mother unilaterally ceased [L.S.'s] medication in around February 2016 resulting in a "new peak of violence" from [L.S.] including attacks on siblings and parents.

Father asserts Mother downplays the extent of [L.S.'s] behavior and is incapable of disciplining [L.S.] and the other children. Mother agrees medication did calm [L.S.], but worries that the medication is for the benefit of the parents and not the benefit of [L.S.] Mother asserts she consulted with [L.S.]'s pediatrician before ceasing [L.S.]'s medication.

18. Judy Phillips is [L.S.]'s current therapist. Father contacted Ms. Phillips seeking services for [L.S.] Ms. Phillips began therapy with [L.S.] on September 22, 2015. [L.S.] has continued in therapy with Ms. Phillips since that time approximately twice per month. Both parents attended the initial appointment citing concerns regarding anxiety, ADHD, and ability of [L.S.] to manage her emotions appropriately and consistently. Mother has routinely transported [L.S.] to therapy and participated as requested by Ms. Phillips. Father has only attended one (1) other appointment in February 2016, when Ms. Phillips met with the parents to discuss [L.S.'s] progress. Both parents expressed concern about [L.S.'s] medication and were encouraged to speak with the medication prescriber.

19. Ms. Phillips believes [L.S.] has made progress with decreasing anxiety and improved ability to manage emotions consistently. Ms. Phillips reports a current diagnosis for [L.S.] as A[d]justment Disorder, Mixed and ADD. Ms. Phillips believes [L.S.] does not meet the criteria for DMDD. The concerns regarding [L.S.'s] behavior are not observed in the school environment. Mother acknowledges [L.S.'s] behavioral issues and expresses concern over Father's discipline methods. [L.S.] has not expressed fear of either parent. [L.S.] has not expressed concern about Mother's ability to protect her. Ms. Phillips recommends ongoing therapy for [L.S.]

20. Father is unlikely to complete evaluations or services to address his parenting style and/or issues of domestic violence. Mother's attorney has advised Mother not to execute certain releases for information as requested by DCS. The [C]hildren

have continued to remain in Mother's care since the onset of this CHINS case.

21.     Although Mother did not initiate the 911 call at the time of the October 28, 2016, incident, Mother has since demonstrated a willingness to protect the [C]hildren from further such incidents. There is no evidence Mother has failed to actively pursue a dissolution of marriage and no evidence Mother has continued a relationship with Father. Mother has reported violations of the Order for Protection. Mother has continued counseling for [L.S.]

22.     Based on the specific circumstances of this case, Court finds that coercive intervention is not necessary. A modification of the provisional order in the pending dissolution proceeding combined with the existing Order for Protection and retention of the firearms by the Sheriff allows Mother to continue providing appropriate care and supervision for the [C]hildren.

23.     Accordingly, Court issues a contemporaneous Notice of Juvenile Court Jurisdiction and Juvenile Court Orders. Court notes DCS submitted a Status Report on April 20, 2017, containing recommendations from Ms. Phillips of no contact between Father and [L.S.] until Father is able to recognize his responsibility and accountability in the trauma [L.S.] has suffered, Father participates in individual therapy to address the same, and a safety plan is developed regarding such contact.

Appellant's App. at 78-79 (emphasis added). This appeal ensued.[2]

---

[2] The State has filed a notice of intent not to file an appellee's brief. The State notes that, in light of the negative judgment standard of review, "DCS has been unable to identify any error of law giving rise to a meritorious argument for reversal of the trial court's order denying DCS' CHINS petition." Notice of Intent at 3.

# Discussion and Decision

## *Issue One: Supervised Visitation*

[6] Father first contends that the trial court erred when it denied his repeated requests to exercise supervised visitation with the Children. We do not address this issue, however, because it is moot. An issue becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. *Ind. High Sch. Athletic Ass'n, Inc. v. Durham*, 748 N.E.2d 404, 410 (Ind. Ct. App. 2001). In addition, when the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions and the court will not retain jurisdiction to decide them. *Id.*

[7] Here, during the pendency of the CHINS petition, the court referred "[m]atters of custody, parenting time, and support" to the dissolution court. Appellant's App. at 77. And, now that the CHINS proceeding is closed, the dissolution court has sole jurisdiction over parenting time issues. *See* Tr. Vol. 3 at 20. Indeed, following mediation in the dissolution proceedings, Father and Mother have agreed to weekly supervised parenting time for Father with C.S. and W.S., and Father will work with Judy Phillips towards attending therapy sessions with L.S. June 28, 2017, Mediation Agreement at 1-2. To the extent Father challenges the juvenile court's interlocutory denials of his requests for supervised visitation, even if we were to conclude that the court had erred we

could not render effective relief now.[3]  In sum, again, Father's contention on this issue is moot.

### Issue Two:  Due Process

[8]  Father contends that the trial court violated his right to due process "when no final fact-finding order was entered until 159 days after" DCS had filed its CHINS petition and when the court gave him only "twelve (12) minutes to present evidence" at the final hearing.  Appellant's Br. at 18.  Due process protections bar "state action that deprives a person of life, liberty, or property without a fair proceeding."  *J.A. v. Ind. Dep't of Child Servs. (In re G.P.)*, 4 N.E.3d 1158, 1165 (Ind. 2014) (citation omitted).  Due process protections are vital during all stages of CHINS proceedings "because every CHINS proceeding has potential to interfere with the rights of parents in the upbringing of their children."  *Id.* (internal quotation marks and citation omitted).  Due process requires "'the opportunity to be heard at a meaningful time and in a meaningful manner.'"  *S.S. v. Ind. Dep't of Child Servs. (In re K.D.)*, 962 N.E.2d 1249, 1257 (Ind. 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

[9]  Father first maintains that, because Indiana Code Section 31-34-11-1 requires a trial court to "complete a fact-finding hearing not more than sixty (60) days after" a CHINS petition is filed, the trial court violated his right to due process

---

[3]  In any event, the protection order prohibited contact between Father and the Children, with no exception for visitation.

when it completed the fact-finding hearing more than four months after the CHINS petition was filed in this case. Father acknowledges that the statute permits an extension of time "if all parties in the action consent to the additional time," but he states that "the record does not establish that [he] either requested or agreed to any of the continuances or extensions." Appellant's Br. at 18.

[10] Father is incorrect. The first day of the fact-finding hearing, January 12, 2017, was held within the statutory sixty-day timeframe. At the conclusion of the hearing on that date, the trial court discussed potential dates for the continuation of the hearing, and Father's counsel expressly asked the court for a date that would accommodate a "longer" hearing. Tr. Vol. 2 at 38. Father did not object to the March 8, 2017, hearing date. And, at the conclusion of the March 8 hearing, Father's counsel said that the proposed April 21, 2017, hearing date "work[ed]" for him. *Id.* at 150. Finally, the trial court issued its final order three days after the fact-finding hearing was concluded. The trial court did not violate Father's right to due process either in scheduling the fact-finding hearing dates or in issuing its final order.

[11] Father also maintains that he was "only given twelve (12) minutes to present evidence." Appellant's Br. at 18. In support of that contention, Father cites to the transcript, where, on direct examination of Father, Father's counsel said, "you understand we have about twelve minutes left in this hearing . . . ." Tr. Vol. 3 at 11. Father also complains that the trial court "sternly directed [him] to 'limit' his answers" when DCS examined him. *Id.* Father's contentions on this

issue are entirely without merit. Over the course of three days, Father was able to examine and cross-examine multiple witnesses. And Father testified at all three hearings. Father has not demonstrated that he was denied his right to due process in his efforts to "present evidence" during the fact-finding hearing.

### Issue Three: Denial of CHINS Petition

[12] Finally, Father contends that the trial court's denial of the CHINS petition is clearly erroneous. A CHINS proceeding is a civil action; thus, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re K.D.*, 962 N.E.2d at 1253. We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*

[13] Indiana Code Section 31-34-1-1 ("Section 1") provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the
> coercive intervention of the court.

[14] And Indiana Code Section 31-34-1-2 ("Section 2") provides in relevant part:

> A child is a child in need of services if before the child becomes
> eighteen (18) years of age:
> (1) the child's physical or mental health is seriously endangered
> due to injury by the act or omission of the child's parent,
> guardian, or custodian; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
>
> > (B) is unlikely to be provided or accepted without the
> > coercive intervention of the court.

[15] Here, DCS alleged that L.S. and C.S. were CHINS under both Section 1 and Section 2. And DCS alleged that W.S. was a CHINS under Section 1. In particular, DCS alleged that all three children were victims of neglect and that L.S. and C.S. were victims of abuse. DCS alleged in its CHINS petition that Father had physically abused Mother in the presence of the Children and that Father had physically abused L.S. and C.S., resulting in injuries to them.

[16] Father first contends that, under Indiana Code Section 31-34-12-4, there was a rebuttable presumption that L.S. and C.S. were CHINS. That statute provides:

> A rebuttable presumption is raised that the child is a child in need
> of services because of an act or omission of the child's parent,
> guardian, or custodian if the state introduces competent evidence
> of probative value that:

(1) the child has been injured;

(2) at the time the child was injured, the parent, guardian, or custodian:

> (A) had the care, custody, or control of the child; or

> (B) had legal responsibility for the care, custody, or control of the child;

(3) the injury would not ordinarily be sustained except for the act or omission of a parent, guardian, or custodian; and

(4) there is a reasonable probability that the injury was not accidental.

[17] Father maintains that the trial court erred when it did not find a rebuttable presumption that L.S. and C.S. were CHINS and, in the alternative, that Mother did not rebut the presumption. But Father does not direct us to any evidence[4] presented at the fact-finding hearing that L.S. and C.S. had suffered *injuries* as a result of an act or omission by Father or Mother. Indeed, Father denied having caused bruising to L.S. when he struck her with a belt. Father only directs us to evidence that a "physical altercation" occurred involving L.S., C.S., Father, and Mother. Tr. Vol. 2 at 208. Father has not demonstrated error on this issue.

---

[4] The CHINS petition is not evidence.

[18]     Father next contends that the trial court should have found the Children to be CHINS based on his admission that they were CHINS. In support of that contention, Father cites our Supreme Court's opinion in *N.L. v. Indiana Department of Child Services (In re N.E.)*, 919 N.E.2d 102, 106 (Ind. 2010). But nothing in *In re N.E.* supports Father's contention on this issue. While Father's admission was evidence in support of a CHINS determination, the trial court was not *required* to find the Children to be CHINS based on that admission.

[19]     Finally, Father maintains that the trial court clearly erred when it denied the CHINS petition because of the evidence of domestic violence in the home and because Mother stopped giving L.S. her medication. In essence, Father contends that the evidence does not support the court's conclusion that the coercive intervention of the court is not necessary for the Children's care, treatment, or rehabilitation. We cannot agree.

[20]     Father is correct that domestic violence can support a CHINS determination. *See In re N.E.*, 919 N.E.2d at 106. But it is well settled that a CHINS adjudication "may not be based solely on conditions that no longer exist" and that the court should "consider the [family's] situation at the time the case is heard by the court."[5] *S.S. v. Ind. Dep't of Child Servs. (In re R.S.)*, 987 N.E.2d 155, 159 (Ind. Ct. App. 2013). Here, Mother testified that, since Father had left and

---

[5] We reject Father's contentions that the Children are CHINS based on Mother's *prior* alleged failures to cooperate with DCS, law enforcement, and/or the trial court. In any event, Father's citations to the record in support of those allegations do not support his assertions.

she obtained the protection order, there was no more domestic violence in the home, and Phillips corroborated that testimony.

[21] To the extent Father maintains that L.S. should be taking medication for DMDD and that Mother discontinued the medication without first consulting L.S.'s pediatrician, Mother testified that she "had discussions with [L.S.'s] doctor" prior to discontinuing L.S.'s medication. Tr. Vol. 2 at 83. And, in any event, Mother testified that Phillips "does not consider [L.S. to have] DMDD." *Id.* at 82. Phillips testified that, with consistent therapy, L.S. has shown decreased anxiety and is now better able to "manage her emotions appropriately." *Id.* at 167.

[22] Father's contentions amount to a request that we reweigh the evidence, which we will not do. Mother testified that she continues to pursue dissolution of her marriage to Father, that she obtained a protection order, and that she has no intention of reconciling with Father. Thus, Mother presented evidence that she has taken several measures to prevent domestic violence between Father and Mother and to protect the Children from exposure to such violence in the future. And while Father maintains that L.S. presents an ongoing danger to Mother, C.S., and W.S., the evidence shows otherwise. The trial court's denial of the CHINS petition was not clearly erroneous.

## Conclusion

[23] Father's contention that the trial court erred when it denied his repeated requests for supervised visitation is moot. The trial court did not deny Father's

right to due process when it continued the fact-finding hearing, with Father's consent, until April 21, 2017. And the trial court's denial of the CHINS petition was not clearly erroneous.

[24] Affirmed.

Kirsch, J., and Brown, J., concur.