## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2018, 10:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Jill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: the Matter of A.M.
(Minor Child),
A Child in Need of Services,

and,

J.J. (Mother),
*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,
*Appellee-Petitioner.*

June 13, 2018

Court of Appeals Case No.
17A-JC-3038

Appeal from the Knox Superior
Court

The Honorable Gara U. Lee,
Judge
The Honorable J. David Holt,
Senior Judge

Trial Court Cause No.
42D01-1708-JC-143

**Barnes, Judge.**

# Case Summary

[1] J.J. ("Mother") appeals the trial court's order finding her child, A.M., to be a child in need of services ("CHINS"). We affirm.

# Issue

[2] Mother raises one issue, which we restate as whether the evidence is sufficient to support the trial court's finding that A.M. is a CHINS.

# Facts

[3] Mother and T.M. ("Father") are the parents of A.M., who was born in April 2017. On July 31, 2017, Mother and Father went to a hospital with three-month-old A.M. They reported that they picked up a hitchhiker earlier in the evening, that the hitchhiker rode in the backseat with A.M., that Father was experiencing sweating, shaking, and hallucinations after taking a "pain pill" given to him by the hitchhiker, and that they were concerned A.M. had been given drugs by the hitchhiker. Appellant's App. Vol. II p. 32. Shortly after arriving at the hospital, Mother decided that A.M. was fine and attempted to leave. She was stopped, and the hospital tested A.M.'s urine. His results "came back clean." *Id.* Father, on the other hand, tested positive for methamphetamine, THC, opiates, and amphetamines. Mother refused to participate in a drug screen.

[4]     The hospital contacted the Knox County Office of the Department of Child Services ("DCS"). Mother told DCS that she was involved in a domestic violence situation with Father. After DCS informed Mother that they were going to detain A.M., Mother attempted to run out of the hospital while holding him. Officers asked her to hand over the baby, but she held him tightly while screaming profanities in the emergency room. Officers had to pry her arms off A.M. Mother became aggressive with the officers, and she was handcuffed and arrested.

[5]     DCS filed a petition alleging that A.M. was a CHINS. At the start of the fact-finding hearing, Father stipulated to the following:

> 3. That on or about July 31, 2017, the child's physical or mental condition was seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parents, guardian or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision in that: the parents suffer from substance abuse issues.

> 4. That the following services will be agreed to at the dispositional hearing to be held in this case and are necessary to remedy the reasons for removal:

> Visitation, homebased casework focusing on sober living and/or parenting education; random drug screens and treatment for substance abuse; and ensuring the provision of a safe, stable environment free of abuse or neglect.

5. This stipulation is not, and shall not be construed in any manner, as an admission of any criminal act or omission on the part of either parent;

6. That the child, [A.M.], needs care, treatment, or rehabilitation that the child is unlikely to be provided or accepted without the coercive intervention of the court, and the parents agree to participate in all services ordered by the court to protect and safeguard Child; and,

7. That there is a factual basis for adjudicating Child as a child in need of services under § 31-34-1-1.

*Id.* at 12. Father then verbally admitted "that there is a drug issue, or has been," but he claimed to be "working on it . . . ." Tr. Vol. II p. 7. Mother's counsel stated that Mother would be entering into a verbal stipulation. However, after privately conferring with her attorney, Mother denied the CHINS allegations. The parties stipulated that the "sole evidence before the Court will be the intake officer's report of preliminary inquiry, and the CHINS petition." *Id.* at 14. They agreed that those documents would be "entered as substantive evidence" and that the trial court would "make a finding based on those two documents." *Id.* The trial court found A.M. to be a CHINS. The trial court then entered a dispositional order that required Mother and Father to participate in certain services. Mother now appeals.

# Analysis

[6] Mother challenges the trial court's finding that A.M. is a CHINS. "A CHINS proceeding is a civil action; thus, 'the State must prove by a preponderance of

the evidence that a child is a CHINS as defined by the juvenile code.'" *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (quoting *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*

[7] "There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS." *Id.* DCS must first prove the child is under the age of eighteen. *Id.* DCS must then prove that at least one of eleven different statutory circumstances exists that would make the child a CHINS. *Id.* Finally, "in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court." *Id.*

[8] Here, the trial court found A.M. to be a CHINS based on Indiana Code Section 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2)     the child needs care, treatment, or rehabilitation that:

(A)     the child is not receiving; and

(B)     is unlikely to be provided or accepted without the coercive intervention of the court.

Mother argues that DCS failed to prove that A.M.'s physical or mental condition was endangered by the parents or that the coercive intervention of the court was necessary.

[9]     We first address whether DCS proved that A.M.'s physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parent to supply him with necessary food, clothing, shelter, medical care, education, or supervision. The trial court found that DCS had met this burden because "the parents suffer from substance abuse issues." Appellant's App. Vol. II p. 66. Mother argues this finding is erroneous because, other than Father's stipulation, the record contains no evidentiary support for the finding that Mother has a drug issue. Mother argues that Father's stipulation "was not admitted during the factfinding hearing" and that the only evidence at the factfinding hearing was the preliminary inquiry and the CHINS petition. Appellant's Br. p. 11.

[10]     It is possible for one parent's admission to considered as evidence even where the other parent is contesting the CHINS determination. *See In re Matter of L.S.*, 82 N.E.3d 333, 341 (Ind. Ct. App. 2017) ("While Father's admission was evidence in support of a CHINS determination, the trial court was not required

to find the Children to be CHINS based on that admission."), *trans. denied*; *see also K.D.*, 962 N.E.2d at 1256-57. Here, Father stipulated that "the parents suffer from substance abuse issues." Appellant's App. Vol. II p. 12. However, later during the hearing, the parties stipulated that the "sole evidence before the Court will be the intake officer's report of preliminary inquiry, and the CHINS petition." Tr. Vol. II p. 14. They agreed that those documents would be "entered as substantive evidence" and that the trial court would "make a finding based on those two documents." *Id.* Under these circumstances, we conclude that Father's stipulation should not have been considered with respect to Mother.

[11] The preliminary inquiry and the CHINS petition support the finding that Father has a substance abuse issue, but there is no direct support in those documents for the finding that Mother has a substance abuse issue. DCS was not necessarily required to present evidence as to Mother. *See K.D.*, 962 N.E.2d at 1257 ("[A] scenario could exist where a child is born positive for cocaine and the mother wants to admit the child is a CHINS, but the father, who has no problems of his own and does not live with the mother, wants to contest that his newborn child is a CHINS. While he might not contest the factual allegation the mother is admitting, he has the right to contest the allegation that his child needs the coercive intervention of the court."). However, even if we examine the evidence directly related to Mother, there is evidence to support the trial court's conclusion.

[12]     Even where a trial court's finding is erroneous, we may affirm where, after examining the entire judgment, we determine that the erroneous finding does not constitute the sole support for any conclusion of law necessary to sustain the judgment. *In re B.J.*, 879 N.E.2d 7, 20 (Ind. Ct. App. 2008), *trans. denied*. Even if we do not consider Father's stipulation, we conclude that the evidence is sufficient to conclude that A.M.'s physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parent to supply the child with necessary food, clothing, shelter, medical care, education, or supervision. Later in the order, the trial court also concluded:

> The Parents took the child to the hospital believing him to have been given a substance by a stranger, attempted to leave the hospital before the child was checked, and the mother [was] behaving very erratically. The Father tested positive for amphetamine, methamphetamine, THC, and opiates. The Mother refused a screen.

Appellant's App. Vol. II p. 66. This finding is supported by the preliminary inquiry. While A.M. was in their care, Mother and Father allowed a hitchhiker to sit in the backseat with A.M. Father took a pill from the hitchhiker that caused him to need emergency care, and they were concerned that the hitchhiker had also given a substance to A.M. This evidence supports the trial court's conclusion that A.M.'s physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parents to supply him with necessary supervision.

[13]     Next, Mother argues that the trial court erroneously found that A.M. needs care, treatment, or rehabilitation that he is unlikely to be provided or accepted without the coercive intervention of the court. Mother contends that the "record does not reflect any inadequacies in Mother's care of A.M." Appellant's Br. p. 15. We disagree. The preliminary inquiry and CHINS petition demonstrate that, despite concern that a hitchhiker had given A.M. a substance, Mother attempted to remove A.M. from the hospital without having the test results completed. She was stopped, but later attempted to remove A.M. from the hospital a second time. Officers had to restrain her, forcibly remove A.M. from her arms, and arrest her. The trial court properly found that A.M. needed care, treatment, or rehabilitation that he was unlikely to be provided or accepted without the coercive intervention of the court.

[14]     We, therefore, conclude that sufficient evidence was presented at the fact-finding hearing to establish that Mother was unable or refused to supply A.M. with necessary food, clothing, shelter, medical care, education, or supervision, and A.M.'s physical or mental condition was seriously impaired or seriously endangered as a result and that A.M. needed care, treatment, or rehabilitation that he was not receiving and was unlikely to be provided without the coercive intervention of the court. *See* Ind. Code § 31-34-1-1. Sufficient evidence supported the juvenile court's determination that A.M. was a CHINS.[1]

---

[1] Mother challenges the trial court's findings that the parents agreed to participate in certain services. Mother argues that she never agreed to the services and that the services were unnecessary. This portion of the order

# Conclusion

The evidence is sufficient to support the trial court's determination that A.M. is a CHINS. We affirm.

Affirmed.

Vaidik, C.J., concurs.

Pyle, J., dissents.

---

is identical to Father's stipulation. Mother is correct that, although Father agreed to those services, she did not. This error, however, does not impact the determination of whether A.M. is a CHINS. Rather, it relates to the services ordered in the dispositional order, which Mother does not address. Consequently, the error is harmless.

Mother also argues that the following finding is erroneous: "The Court finds that reasonable efforts to prevent or eliminate the removal of the child was not required due to the emergency nature of the situation." Appellant's App. Vol. II p. 66. This finding relates to A.M.'s detention under Indiana Code Chapter 31-34-5, not the CHINS determination. Further, the finding is supported by the evidence. Based on the preliminary inquiry, which was admitted as substantive evidence, Mother and Father picked up a hitchhiker and allowed the person to sit in the backseat with A.M., Father took drugs from the person and started hallucinating, they worried that A.M. had also been given drugs, and Mother was behaving erratically at the hospital but refused a drug test for herself. Based on this evidence, the trial court's finding is not erroneous.