INDIANA HIGH SCHOOL ATHLETIC ASSOCIATION, INC., Appellant–Defendant,

v.

Jasmine S. WATSON, individually and by and through her mother, Valerie K. Watson, Appellees–Plaintiffs,

and

South Bend Community School Corporation, Appellee–Intervenor.

No. 71A03–0901–CV–25.

Court of Appeals of Indiana.

Sept. 24, 2009.

Robert M. Baker III, Law Office of Robert M. Baker III, Indianapolis, IN, Attorney for Appellant.

Jon B. Laramore, Edward A. Sullivan, III, Amy M. Steketee, Baker & Daniels LLP, South Bend, IN, Attorneys for Appellee Intervenor.

**OPINION**

BAKER, Chief Judge.

Valerie Watson is a single mother supporting three children and one grandchild. Over the course of two years, her salary was nearly halved and her work hours drastically curtailed because of the economic downturn experienced by the RV industry. As a result, she was unable to make mortgage payments and received a notice of foreclosure. Valerie decided to move to South Bend from Elkhart because she was unable to locate a suitable home in Elkhart that would rent to her and because she had family members in South Bend who were able to help her care for the children. The IHSAA, however, found Valerie's daughter, Jasmine, ineligible to play for South Bend Washington High School's basketball team because it concluded that the move and transfer occurred primarily for athletic reasons and because of improper undue influence. The trial court found that the IHSAA acted arbitrarily and capriciously and entered a preliminary injunction prohibiting the IHSAA from enforcing its ineligibility decision. We find that the trial court did not err by entering the injunction.

Appellant-defendant Indiana High School Athletic Association, Inc. (IHSAA), appeals the trial court's order entering a preliminary injunction in favor of appellees-plaintiffs Jasmine S. Watson, individually and by and through her mother, Valerie K. Watson. IHSAA argues that the trial court erred by finding that the Watsons are likely to succeed on the merits of

their claim and by granting an overbroad injunction. Finding no error, we affirm.

## FACTS

### The Move to South Bend

Sometime in 2003 or 2004, the Watsons moved to Elkhart. Jasmine attended Elkhart Memorial High School for her freshman (2005–06), sophomore (2006–07), and junior (2007–08) years, and played for the high school basketball team all three years. She is a highly talented basketball player: she was a junior Indiana All–Star, was named to the 2009 All–Star team, and received recruiting inquiries and letters from multiple NCAA Division I programs.

In September 2007, Valerie, Jasmine's mother, received notice from her employer that her hours would be reduced such that she would work only four days per week and six hours per day. This decrease caused a substantial reduction in Valerie's wages and net income. In March 2008, Valerie's wages were garnished because of a judgment that had been entered against her. As a result of the decrease in her income and the garnishment, Valerie was unable to make timely mortgage payments on the family home. In June 2008, Valerie received a foreclosure complaint from her mortgage company. Valerie listed the home for sale in July 2008; consequently, Valerie and her family could have remained in the residence rent-free until November 2008 if it did not sell.

Valerie decided to begin looking for another place to live in the summer of 2008 because, if it turned out that they would have to change school districts, she did not want her children to have to change schools in the middle of the school year. She looked at multiple homes in Elkhart but was either rejected because of her credit rating or concluded that the properties were too expensive, too small, or located in areas she considered to be unsafe.

Larry Fielstra, Jasmine's basketball coach at Elkhart Memorial, learned that Valerie was having a hard time locating a suitable home in Elkhart. Fielstra offered her assistance in locating housing in Elkhart, including contacting multiple landlords and real estate agents. Fielstra referred Valerie to one property where he had arranged for the owner to waive the security deposit and offer it at a reduced rent amount, but Valerie rejected the property because it was located next to a liquor store. When it became clear that Valerie was looking beyond Elkhart for housing, Fielstra offered to provide transportation to Jasmine so that she could live with her family outside of Elkhart but still attend Elkhart Memorial.

Valerie eventually expanded her search to South Bend, which is where she grew up and where her extended family lived. On July 29, 2008, Valerie signed a six-month lease for a home on the southwest side of South Bend, in the South Bend Washington High School (Washington) district.

### The IHSAA

The IHSAA is a nonprofit corporation whose members include public and private high schools in Indiana. The organization's purpose is "to encourage, regulate and give direction to wholesome, amateur, interschool athletic competition between the schools who are members." Appellant's App. p. 559–60. To achieve these ends, the IHSAA has adopted rules governing interscholastic competition. Washington and Elkhart Memorial are both member schools of the IHSAA and are subject to the IHSAA competition and eligibility rules.

Among IHSAA's eligibility rules are Rule 19 (the Transfer Rule) and Rule 20 (the Undue Influence Rule). Among other things, the Transfer Rule provides that

students who transfer from one school to another with an accompanying change of residence are generally immediately eligible to participate in varsity sports. If, however, a student transfers for "primarily athletic reasons" or as a result of undue influence—even if the student's family has changed residences—the student will be ineligible to participate in interschool athletics for 365 days following enrollment at the new school. *Id.* at 594. The purpose of this rule is to "preserve the integrity of interschool athletics and to prevent or minimize recruiting, proselytizing and school 'jumping' for athletic reasons, regardless of circumstances...." *Id.*

The Undue Influence Rule prohibits the "use of undue influence by any person or persons to secure or to retain a student, or to secure or to retain one or both of the parents or guardians of a student as residents...." *Id.* at 598. The IHSAA does not define "undue influence," but identifies a number of examples of prohibited inducements to transfer:

a. offer or acceptance of money or other valuable consideration;

b. reduction or remission of regular tuition;

c. waiving the legal requirements of transfers;

d. offer or acceptance of board, room or clothing;

e. offer or acceptance of remuneration for work in excess of amount regularly paid for such service;

f. free transportation;

g. transportation by a coach, principal, teacher or school official;

h. offer or acceptance of residence with coach, principal, teacher or school official;

i. free rent or reduced rent for parents;

j. offer or payment of moving expenses of parents;

k. any inducement to get parents or student to enroll in a particular school or to induce parents to change residence for athletic reasons.

*Id.*

### The Dispute

Under the IHSAA rules, a student who transfers from one member school to another must complete an IHSAA Athletic Transfer Report to be eligible to participate in athletics. In early August 2008, Valerie completed a transfer report for Jasmine, requesting that the transfer be approved based on the family's change of residence. The request was sent to Elkhart Memorial for input and approval, but because Elkhart Memorial coaches believed that the transfer was based on athletic reasons and undue influence, Elkhart Memorial refused to approve Jasmine's request for full eligibility.

The IHSAA Assistant Commissioner reviewed and investigated Jasmine's transfer request, finding Jasmine ineligible pursuant to the Transfer Rule. He did not note any violation of the Undue Influence Rule. Jasmine and Valerie appealed the decision and requested a hearing before the IHSAA Review Committee.

On August 9, 2008, the IHSAA Review Committee held an administrative hearing on Jasmine's request for full eligibility for the 2008–09 basketball season—her senior year of high school. The IHSAA and the Watsons presented multiple witnesses, with the IHSAA's witnesses testifying that they believed the school district transfer had occurred primarily for athletic reasons and the Watsons' witnesses refuting that version of events.

Specifically, Fielstra testified for the IHSAA, explaining that he met with Jas-

mine and Valerie on July 18, 2008, and at the meeting Valerie commented that one of the reasons Jasmine was leaving Elkhart Memorial was because he did not push her hard enough and stated that she had already talked with Washington coaches about the transfer. Furthermore, Fielstra testified that in the spring of 2008, he had heard that Valerie was angry with Elkhart Memorial and that Jasmine's grandmother had told someone that the family was looking for another place for Jasmine to play basketball. Multiple witnesses also testified that they had heard that the Washington coaches were pursuing Jasmine to play basketball at Washington. Fielstra testified that he was upset that Jasmine had transferred to Washington and also admitted that he would not have opposed Jasmine's transfer request if she had transferred to any other high school in South Bend.

Jasmine testified that she had not been recruited by Washington coaches. She also stated that she was upset about the move to South Bend because she did not want to leave her friends and teammates right before her senior year. Had it been her choice, Jasmine stated that she would have preferred the family to remain in Elkhart. An Elkhart Memorial assistant basketball coach had offered to let Jasmine live with her for the school year but Jasmine stated she declined because even though she wanted to continue attending Elkhart Memorial, it was more important to her to live with her family. Valerie also testified that she had never been solicited by any Washington coaches. She stated that it was her decision to move to South Bend and that she made the decision based on financial and family reasons. In South Bend, she was able to obtain help from nearby extended family, who transported the children to school and after school activities. The Washington coaches testified and denied recruiting Jasmine to attend their school.

On October 17, 2008, the Review Committee issued a written decision upholding the Commissioner's determination that Jasmine was ineligible for 365 days from the date of her enrollment. The Committee concluded that the move to South Bend had violated the Transfer Rule because it was done primarily for athletic reasons or was the result of undue influence. Furthermore, the Committee determined that there had been a violation of the Undue Influence Rule when one of the Washington basketball coaches encouraged Jasmine to leave Elkhart Memorial and transfer to Washington.

On November 17, 2008, the Watsons filed a complaint seeking an injunction prohibiting the IHSAA from enforcing its October 17 decision. The trial court held an evidentiary hearing on December 16, 2008, at which it heard testimony from multiple witnesses. On December 19, 2008, the trial court granted a preliminary injunction, finding and concluding, in relevant part, as follows:

27. Valerie has been employed for twenty years by Irving Shade, Elkhart, Indiana, which makes doors for the RV industry. During 2006, her income was $42,714 and $35,052 in 2007. Her income in 2008 should be approximately $28,000. She is currently on temporary lay off [sic] from her employer until early January. She is only working three days per week and grossing about $300.00 per week; she has applied for unemployment compensation to supplement her income.

\* \* \*

32. Valerie's husband ... has been incarcerated in prison since 2006, making Valerie the only source of income for her family.

* * *

39. When Valerie was not able to find suitable housing for her family's needs in the Elkhart area, she expanded her housing search into the South Bend area in early July.

* * *

45. During the month of July 2008, Jasmine spent most of her time in Indianapolis with her basketball teammates ... This team was coached by Kevin Merriweather, a local Indianapolis high school coach.

* * *

47. Jasmine never mentioned to Coach Merriweather in July of 2008 that she would be transferring to Washington High School.

* * *

49. During the month of July 2008, Valerie [ ] continued to look at houses in both the Elkhart and South Bend areas.

50. .... She estimates that she either drove by or personally looked at approximately 30 houses in the South Bend area.

51. Several of the houses which she looked at were [in other school districts in South Bend].

* * *

58. The Watson home [in South Bend] is a five bedroom place; each of the children and [Valerie] have their own bedrooms. Additionally, Valerie['s] older daughter has moved into the home to take care of her child, who is Valerie's grandchild.

59. The home ... was not only large enough for her family, but was within her price range.

60. Valerie ... grew up in the South Bend area and most of her family still lives in South Bend. She has no family members in Elkhart.

61. Her family ... has been available to take Valerie's children to school in the morning.... Valerie is required to be at her job at Irving Shade at 5:00 in the morning. Therefore, she has to leave for work several hours before her children had to be at school.

62. Valerie's children, including Jasmine, had attendance or tardy problems while attending Elkhart Schools.

63. Her children have not had similar attendance or tardy problems this semester while attending South Bend schools.

64. Valerie's two other children are heavily involved in various sports, requiring her to rely on her extended family in the South Bend area to assist her in transporting them to and from practices and various games.

* * *

80. Valerie testified that Jasmine would have attended [one of the other three South Bend high schools] if she had been able to find a home in ... those school districts.

81. Valerie further testified that she had never been solicited by any coaches or officials at Washington [ ] to transfer from Elkhart Memorial to Washington.

* * *

91. .... It was Jasmine's own desire to stay with Elkhart Memorial and her teammates, but her mother made the decision to move to South Bend for economic and family reasons.

* * *

96. This Court finds that Paragraph 5 (Pages 6–10) of [the IHSAA Review Committee's] Findings, dealing with "information" developed by Assistant Commissioner Bobby Cox during his investigation, contains numerous statements based on hearsay, disputed evidence or false assumptions. . . .

* * *

99. In Finding 22, the Committee took notice of I.C. 20–26–13–2(8), which provides that a student shall have senior rights and is permitted to complete school at the school where the student completed her 11th grade. The Committee . . . took notice that Jasmine could have continued at Elkhart Memorial for her senior year, despite her move to South Bend. This court finds that this Finding disregards the transportation problems that would have been experienced by Valerie with Jasmine at Elkhart Memorial and Valerie's two other children at [a middle school] in South Bend.

* * *

117. This Court acknowledges that IHSAA Findings 25–37 were supported by testimony from the IHSAA witnesses at the October 9th hearing before the Review Committee. Nevertheless, as previously noted by this Court, many of those findings are based on hearsay, double hearsay, conflicting testimony or overreaching assumptions. The IHSAA failed to call a number of witnesses to substantiate the hearsay and double hearsay . . . statements to support its claims of undue influence or athletic motives on the part of the Watson family.

* * *

119. . . . . [T]he substantive probative evidence of record indicates that Valerie [ ] moved her family to South Bend for economic and family reasons, not because of any recruitment efforts allegedly made by [the Washington coach]. The timing of Valerie['s] move of her family to South Bend occurred within months after being served with a foreclosure lawsuit, which is the precipitating event in this case, caused by the reduction in her income.

* * *

121. This Court further finds that the IHSAA has failed to prove by substantive probative evidence that [Valerie] moved her family to South Bend for primarily athletic reasons. As stated above, the primary reasons for [Valerie's] move to South Bend were economic and family reasons, not athletic ones.

* * *

124. Since the substantive and probative evidence of record indicates that the primary reasons for the Watsons' move to South Bend were for economic and family reasons, the Court considers the above statements by the Watsons regarding the Elkhart Memorial basketball program as more in the nature of complaints that are often typical of many parents whose children play sports on any level, including high school sports.

* * *

126. . . . . [T]his Court finds that the IHSAA ignored the attempts by Elkhart Memorial's coaching staff to retain Jasmine, by efforts to find housing for her in the Elkhart area . . . and by Coach Price's offer of housing to Jasmine. . . . The IHSAA also ignored Coach Fiels-

tra's offer to provide transportation to Jasmine while she lived at Coach Price's house.

* * *

128. .... The Committee ... claims that Jasmine's school transfer was not mandated here, because she could have continued to attend Elkhart Memorial, even though she would have been living in South Bend.

129. The IHSAA disregarded the evidence of record of the difficulties that this arrangement would have imposed on Valerie.... If Jasmine continued to attend Elkhart Memorial, her mother would have had to transport her to and from high school, including basketball and track practices and games, early in the morning and later in the evening.

130. .... This situation would have been an added burden on a single mother. It would have required her on some days to simultaneously be in Elkhart and South Bend to transport Jasmine and the other children and/or attend their school or athletic events.

131. .... [T]he IHSAA notes that Jasmine could have remained in her Elkhart home, rent free, until November of 2008....

132. The IHSAA also disregarded the substantive, probative evidence of record of Valerie['s] testimony that she did not want to move her children mid-semester and that she needed help with transporting her children to and from school.

* * *

138. The essence of the IHSAA's conclusion is their questioning of Valerie['s] inability to find a satisfactory rental unit in Elkhart. The Committee found that a three-bedroom unit would have sufficed instead of the four bedroom home apartment being sought by Valerie [ ]. It also questioned the failure of Valerie to accept the illegal assistance offered by Coach Fielstra....

139. The IHSAA points to no Rule that would have required Valerie [ ] to look at a minimum number of houses in the Elkhart community before she would be allowed to look at houses in any other school district. Her testimony indicated that she physically looked at three houses, drove by ten, and also considered 15–20 homes in Elkhart.... The IHSAA's claim that she could have looked at a three-bedroom unit ignores the fact that she was not only raising her three children, but also a grandchild.... The Committee's decision, in this respect, presupposes that it knows what the best living arrangements are for the Watson family. The IHSAA's conclusion also ignores the fact that the Watsons had been living in a six-bedroom home at the time of the foreclosure.

* * *

141. The IHSAA's Conclusion that "nothing" required Jasmine to leave Elkhart Memorial, unless she wanted the Washington basketball team to beat Elkhart Memorial, is not supported by substantive, probative evidence of record, and is arbitrary and capricious. Jasmine wanted to stay with her mother and her family. Jasmine ... did not make the decision to move her family to south Bend. The decision was made by Valerie, acting in her capacity as a parent, doing what she believed was best for her family's needs, financial and otherwise.

*Id.* at 3–49. The trial court found in the Watsons' favor and issued a preliminary injunction prohibiting the IHSAA from holding Jasmine ineligible during the 2008–09 school year. The IHSAA now appeals.

## DISCUSSION AND DECISION

### I. Mootness

■ Although the parties do not raise the issue, it is likely that many readers will wonder why this matter is anything other than moot, given that the 2008–09 basketball season concluded months ago and Jasmine has since graduated from high school. This court has explained the mootness doctrine as follows:

> An issue becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties. When the principal questions in issue have ceased to be matters of real controversy between the parties, the errors assigned become moot questions and the court will not retain jurisdiction to decide them. An actual controversy must exist at all stages of the appellate review, and if a case becomes moot at any stage, then the case is remanded with instructions to dismiss.

*IHSAA, Inc. v. Durham,* 748 N.E.2d 404, 410–11 (Ind.Ct.App.2001) (internal citations omitted).

Initially, we observe that the IHSAA filed a counterclaim against the Watsons for damages—specifically, attorney fees—sustained as a result of wrongful enjoinder. That claim has yet to be resolved. Furthermore, it is possible that if the preliminary injunction were reversed, the IHSAA could seek to apply its Restitution Rule, which "allows the IHSAA to make the school [Washington] forfeit victories, team awards, and funds received from a tournament if it has been determined that an ineligible student athlete has competed for that school." *Id.* at 410. For that reason as well, therefore, this matter is not moot.

■ And in any event, it is well established that "an otherwise moot case may be decided on the merits if the case involves a question of great public interest." *Id.* at 412. The *Durham* court explained that high school athletics often involve issues of great public importance:

> ... [The public interest exception] applies to the instant case because the issue involves children and education, matters that are considered of great public concern, and our court has previously held that a challenge to an IHSAA eligibility rule is an issue of substantial public interest. *See IHSAA v. Raike,* 164 Ind.App. 169, 329 N.E.2d 66, 71 n. 3 (1975)....

> While at first glance high school athletics may not seem to be of great public importance, according to the IHSAA, over 160,000 students statewide participate in sports under the IHSAA eligibility rules. Thus, this issue touches many in our state. Further, the issue of eligibility when a student transfers schools has arisen several times and has been the subject of much litigation. *See also IHSAA v. Carlberg,* 694 N.E.2d 222, 228 (Ind.1997), *reh'g denied* (recognizing the integral role athletics play in our state constitutionally-mandated system of education)....

*Id.* Moreover, the specific issue of a family being forced to relocate because of financial pressures is very likely to recur. Therefore, even if the issue herein were moot, we would decide the merits under the public interest exception to the mootness doctrine.

### II. Standard of Review

■ *Durham* also stemmed from a preliminary injunction issued by a trial court that prohibited the IHSAA from enforcing an eligibility decision. The court explained the applicable standard of review as follows:

The IHSAA asserts that the trial court's findings were clearly erroneous. In this case, the trial court issued an injunction to prevent the IHSAA from enforcing its ruling against [the student]. When we review an injunction, we apply a deferential standard of review. The grant or denial of an injunction is discretionary, and we will not reverse unless the trial court's action was arbitrary or constituted a clear abuse of discretion. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances or if the trial court misinterprets the law.

When the trial court granted the injunction in this case, it issued findings of fact and conclusions. Thus, to determine if the trial court abused its discretion, we must review these findings and conclusions. Our review is two-tiered. First, we must determine whether the evidence supports the findings, and then, whether the findings support the judgment. We will reverse a trial court's findings only if they are clearly erroneous. The findings are erroneous only when the record leaves us with a firm conviction that a mistake has been made.

*Id.* (internal citations omitted). In determining whether the trial court erred by granting a preliminary injunction, we will not weigh conflicting evidence, focusing only on that evidence which supports the trial court's findings, conclusions, and orders. *Wells v. Auberry,* 429 N.E.2d 679, 682 (Ind.Ct.App.1982).

In reviewing the IHSAA's decision, the trial court was to apply an "arbitrary and capricious" standard of review:

In [*IHSAA v. Carlberg,* 694 N.E.2d 222 (Ind.1997)], our supreme court delineated how a trial court should review an administrative ruling made by the IHSAA. Although the IHSAA is a voluntary association, the court held that student challenges to IHSAA decisions are subject to judicial review. *Id.* at 230. The court reasoned that student athletes in public schools do not voluntarily subject themselves to IHSAA rules, and students have no voice in rules and leadership of the IHSAA. *Id.* The court then determined that IHSAA decisions are analogous to government agency decisions and, hence, adopted the "arbitrary and capricious" standard of review used when courts review government agency action. *Id.* at 231. The arbitrary and capricious standard of review is narrow, and a court may not substitute its judgment for the judgment of the IHSAA. *Id.* at 233. "The rule or decision will be found to be arbitrary and capricious 'only where it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.'" *Id.* (quoting *Dep't of Natural Res. v. Ind. Coal Council Inc.,* 542 N.E.2d 1000, 1007 (Ind.1989), *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990)).

\* \* \*

■ Thus, we hold that trial courts may determine whether the denial of a hardship exception in a particular case was the result of arbitrary and capricious action by the IHSAA. In this case, the trial court did not fail to give weight to the IHSAA's broad discretion, as the IHSAA alleges. Rather, in rendering its decision that the IHSAA acted arbitrarily and capriciously, the trial court looked at the IHSAA's particular decision with respect to [the student], applied the appropriate standard, and concluded that the IHSAA's conduct

rose to the level of willful and unreasonable decisionmaking that was in disregard of the facts and circumstances before it. For this, the trial court was well within its discretion.

*Durham*, 748 N.E.2d at 413–14. Additionally, we emphasize that, although in many administrative law cases the trial court issues its ruling purely on the paper record from the agency proceeding, in this case, the trial court held an evidentiary hearing at which multiple witnesses testified and evidence was introduced.[1] We are not in a position to second-guess the trial court's assessment of witness credibility, and will not do so.

### III. The Injunction: Likelihood of Success on the Merits

██ To obtain a preliminary injunction, the movant must establish the following elements by a preponderance of the evidence: (1) a reasonable likelihood of success at trial; (2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmovant from the issuance of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. *Central Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 727 (Ind.2008). The plaintiff bears the burden of proving the first three elements, while the fourth is within the trial court's reasonable discretion. *Whiteco Indus., Inc. v. Nickolick*, 549 N.E.2d 396, 397 (Ind.Ct. App.1990).

██ In this case, the IHSAA challenges the trial court's findings only with respect to the first element—reasonable likelihood of success at trial. A party seeking a preliminary injunction must establish a prima facie case at the hearing. *Avemco Ins. Co. v. State ex rel. McCarty*, 812 N.E.2d 108, 118 (Ind.Ct.App.2004). The movant need not establish that he is entitled to relief as a matter of law, nor must he prove and plead a case that would entitle him to relief upon the merits. *Id.* Thus, in reviewing the trial court's decision, we must only determine "whether the likelihood of success is so improbable as to render the trial court's determination erroneous as a matter of law." *Id.*

### A. Hearsay Evidence

██ The trial court found that much of the "evidence" relied upon by the IHSAA in finding Jasmine to be ineligible was unsubstantiated hearsay and double hearsay. For example, the IHSAA relied on Coach Fielstra's statements that another basketball coach from a different school told Fielstra that one of Jasmine's grandmothers told him (the other coach) that the family was looking for another school for Jasmine because she was not getting the ball enough at Elkhart Memorial. Appellant's App. p. 22. The other coach did not testify at the hearing, so the trial court found this evidence to be unsubstantiated double hearsay.

---

1. The dissent implies that the trial court was incorrect to hold its own evidentiary hearing on this matter. Initially, we note that the IHSAA did not object to the decision to hold a hearing. Moreover, it is entirely appropriate—and, generally, necessary—for a trial court to hold a hearing before ruling on a motion for a preliminary injunction. The IHSAA did object when Valerie and Jasmine introduced evidence that the IHSAA believed was improperly intended to usurp or supplement the administrative record that should determine the merits of the issue. And in fact, the trial court sustained some of the IHSAA's objections and emphasized that it was permitting the introduction of this evidence as relevant to the irreparable harm allegedly suffered as a result of the IHSAA's action, *not* as relevant to the underlying merits of the case. Tr. p. 20–23, 26–32. That is hardly a "trial de novo." Dissent p. 761.

█ The IHSAA argues that hearsay evidence is admissible during administrative proceedings and, in any event, no hearsay objections were raised to any of this evidence at the hearing. Thus, the IHSAA insists that it was erroneous for the trial court to discount the evidence on that basis. As South Bend points out, however, the "[f]ailure to object to the admission of hearsay may waive the right to challenge the evidence as inadmissible on appeal, but the failure to object does not cure incompetent evidence or obviate an administrative agency's obligation to reach a determination based on the substantial evidence." Appellee–Intervenor's Br. p. 29. The trial court did not find this evidence to be *inadmissible*, it evaluated the evidence and found it to be unsubstantiated and non-probative, which was well within its discretion.[2] The lack of an objection during the hearing does not prohibit the trial court from reaching such a conclusion.

### B. Undue Influence

█ The trial court found that the IHSAA acted arbitrarily and capriciously by finding that Jasmine was ineligible based on alleged violations of the Undue Influence Rule. In reaching its conclusion, the IHSAA relied on the following evidence:

- Elkhart Memorial officials' contention "that there has been a history of recruitment by [ ] Washington." Appellant's App. p. 704.

- A statement allegedly made in May 2008 by a Washington coach to "several area coaches"—who did not testify at the hearing—that Washington would be getting Jasmine and two or three players from Michigan City High School. The Washington coach "emphatically denied" making those statements. *Id.*

- Coach Fielstra's testimony about a May 27, 2008, conversation he allegedly had with Jasmine in which she told Fielstra that whenever she went to the center run by Washington Coach Mo Scott, Scott always showed Jasmine his championship ring, saying that if she wanted one, she would have to come to play for his team at Washington. Jasmine denied that she made those statements to Fielstra and she and Scott both deny that any such conversations occurred.

- An Elkhart Memorial assistant track coach testified that Valerie told her that Washington was trying to recruit Jasmine to come play for its basketball team. Valerie denied making such statements.

- Testimony from an Elkhart Memorial teammate of Jasmine, who saw Coach Scott talking with Jasmine on several occasions to encourage her to play for Washington. The teammate, however, did not hear every conversation, and Jasmine and Coach Scott both denied that any recruiting occurred.

As noted above, the Undue Influence Rule prohibits the "use of undue influence by any person or persons to secure or to

---

2. The dissent seems to have misunderstood this portion of the opinion. We have not ruled on—and were not asked to rule on—whether the trial court appropriately excluded evidence because it was hearsay. It made no such ruling, as we have already explained. Indeed, we agree with the dissent that "the normal proscriptions against hearsay do not apply in an administrative proceeding," dis-

sent p. 761, and have drawn no contrary conclusions herein. Evidence must be competent, however, and the trial court was well within its rights to find the type of hearsay and double hearsay evidence relied upon by the IHSAA to be incompetent evidence. In other words, the trial court did not reject the evidence as hearsay, it rejected it as incompetent.

retain a student, or to secure or to retain one or both of the parents or guardians of a student as residents...." *Id.* at 598. The Rule identifies a number of examples of prohibited inducements to transfer:

   a.  offer or acceptance of money or other valuable consideration;

   b.  reduction or remission of regular tuition;

   c.  waiving the legal requirements of transfers;

   d.  offer or acceptance of board, room or clothing;

   e.  offer or acceptance of remuneration for work in excess of amount regularly paid for such service;

   f.  free transportation;

   g.  transportation by a coach, principal, teacher or school official;

   h.  offer or acceptance of residence with coach, principal, teacher or school official;

   i.  free rent or reduced rent for parents;

   j.  offer or payment of moving expenses of parents;

   k.  any inducement to get parents or student to enroll in a particular school or to induce parents to change residence for athletic reasons.

*Id.*

Even if, for argument's sake, we were to take all of the IHSAA's evidence at face value, all that is established is that a number of conversations took place in which one or more Washington coaches encouraged Jasmine to think about transferring to Washington. No illicit offers were made, no bribes extended, no inducements made whatsoever aside from some friendly boasting about a championship ring.[3] We cannot conclude that any of this rises to the level of the "undue influence" prohibited by the above rule.

The same cannot be said, however, for Elkhart Memorial's staff. It is undisputed that Coach Fielstra found a home in Elkhart at a reduced rent rate for the Watsons. It is also undisputed that an Elkhart Memorial assistant basketball coach offered to let Jasmine live with her so that she could continue to attend Elkhart Memorial after her family moved to South Bend. Furthermore, it is undisputed that Coach Fielstra offered to provide transportation to enable Jasmine to attend Elkhart Memorial after her family moved to South Bend.

This conduct unquestionably falls within the prohibited conduct outlined by the Undue Influence Rule. Yet the IHSAA highlighted these instances as evidence that Valerie's decision to move and transfer her children to the South Bend school system was motivated by athletic reasons.[4] In other words, the Watsons had ample op-

---

**3.** The dissent contends that the use of the words "bribe" and "illicit" denote illegal activity. Dissent n. 5. That is incorrect. A "bribe" is "[a] price, reward, gift or favor bestowed upon or promised with a view to pervert the judgment of or influence the action of a person in a position of trust." Black's Law Dictionary 186 (7th ed.1999). "Illicit" means "illegal *or improper.*" *Id.* at 750 (emphasis added). The IHSAA's own examples of prohibited inducements to transfer, set forth above, includes many examples of illicit—in other words, improper—behavior, including behavior that falls within the definition of "bribe." Here, though there was some evidence of conversations that took place, there was *no* evidence of behavior falling into these categories.

**4.** Indeed, had the IHSAA been acting consistently and logically, it would not have explicitly stated that Jasmine could "still ... continue [to play] at Elkhart Memorial, with full eligibility." Appellant's App. p. 713. Had Valerie accepted the rent-reduced apartment or had Jasmine accepted the offers of a place to live and transportation, Jasmine would

portunities to accept prohibited favors from the Elkhart Memorial staff so that Jasmine could remain at Elkhart Memorial; because they declined to do so, the move and transfer must have been motivated by athletic reasons. The trial court found that the IHSAA's inconsistent application of the Undue Influence Rule rendered its decision arbitrary and capricious.

On appeal, the IHSAA argues that the conduct of Elkhart Memorial officials is irrelevant to our disposition herein: "[t]he issue of Washington or Elkhart Memorial's violation of the Undue Influence Rule is not before this Court, and therefore, there is no issue of inconsistent application of the Rule." Appellant's Br. p. 40. We would be inclined to agree, except for the fact that in its eligibility decision, the IHSAA explicitly found that Coach Scott had violated the Undue Influence Rule and ignored the far more egregious conduct of Elkhart Memorial officials. If, as the IHSAA contends, "Jasmine's case [only] involves application of the Undue Influence Rule to the *student* involved," *id.* at 39 (emphasis added), then there was no reason for the IHSAA to have found that Coach Scott violated the Rule as well. Under these circumstances, we find that the trial court was well within its discretion to conclude that the IHSAA acted arbitrarily and capriciously in finding Jasmine ineligible pursuant to the Undue Influence Rule.

### C. Transfer Rule

■ The IHSAA contends that the trial court erred by finding that the IHSAA acted arbitrarily and capriciously when it declared Jasmine ineligible pursuant to the Transfer Rule. The trial court found, essentially, that the Watsons moved because of Valerie's financial difficulties and that

they moved to South Bend because Valerie was unable to find suitable housing in Elkhart and wanted to be closer to her extended family so that they could provide assistance with the children.

For argument's sake, we will take the IHSAA's evidence, including the unsubstantiated hearsay and double hearsay, at face value. We will assume that Valerie and/or Jasmine had expressed dissatisfaction with Jasmine's experience on the Elkhart Memorial team. We will assume that the Washington coaches spoke to Jasmine on multiple occasions, encouraging her to transfer. We will even assume that when Valerie learned that she would have to move, she began looking at homes in South Bend contemporaneously with—or even before—homes in Elkhart.

Taking all of that into account, it would behoove us to take a metaphorical step back and observe the forest, rather than the trees. Over the course of two years, Valerie—a single mother supporting three children and one grandchild—had a salary that was nearly halved and a work schedule that was drastically curtailed because of our struggling economy. She struggled to pay her bills, began using food stamps, and, finally, stopped making regular mortgage payments. She received a notice of foreclosure in the summertime. Though she could have remained in the home for several more months, she chose to move so that her children would not have to be uprooted in the middle of the school year. She searched for a suitable home in Elkhart but was unable to find one that would accept her as a tenant with a low credit rating. She also searched in South Bend and finally found a home that was big enough, in a safe location, within her price

have been ineligible to play at Elkhart Memorial because of the blatant violations of the Undue Influence Rule.

range, and close enough to her extended family that they could lend much needed support to the struggling family.

And what does the IHSAA believe she should have done instead? Among other things, the IHSAA seems to have concluded that the better course for Valerie would have been to have: (1) remained in her foreclosed home until she was kicked out, presumably to give herself a longer period of time to find a home in Elkhart, notwithstanding the risk she was running that her children would have had to transfer schools in the middle of the school year; (2) settled for a home in Elkhart that was too small, too expensive, or situated right next to a liquor store; (3) permitted her teenage daughter to live with her basketball coach, in another town; (4) drastically rearranged her life and minimized the needs of her other children, her grandchild, and herself, spending her precious free time driving Jasmine to and from a school located in another town; and/or (5) overlooked the ready, willing, and able family members located in South Bend who were able to provide much needed assistance to the Watsons.

The standard that the IHSAA applied to the Watsons was unreasonable, untenable, and unrealistic. Even if we assumed all of the IHSAA's evidence to be true, we cannot find that the trial court erred by concluding that the evidence in the record does not, in any way, establish that this move occurred for *primarily* athletic reasons. It is certainly possible that athletics played a role, but to say that athletics played a *primary* role is to ignore and disregard the evidence in the record that this family was struggling and that Valerie did what she believed to be the best thing for her children. The IHSAA found Valerie's decision to be "unusual." Appellant's App. p. 711. Perhaps it was, but

only because she found herself in unusually trying circumstances.

We find that the record amply supports the trial court's conclusions that the IHSAA's conduct rose to the level of willful and unreasonable decision-making that was in disregard of the facts and circumstances before it and that, consequently, it acted arbitrarily and capriciously. Therefore, the trial court did not err by finding that the Watsons established a likelihood of success on the merits and entering a preliminary injunction prohibiting the enforcement of the ineligibility decision.

*IV. The Injunction: Breadth*

The IHSAA also argues that even if the injunction was properly entered, it was overbroad. The injunction states, in relevant part, as follows:

> WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED by this Court that the Plaintiffs' request for injunctive relief is GRANTED and that the [IHSAA] and its agents, servants, employees, and attorneys, and all persons in active concert with the same, are hereby restrained and enjoined, pending the final determination of this action, from holding Jasmine [ ] ineligible under IHSAA Rule 19–5, and from holding her ineligible from playing interscholastic varsity athletics at [ ] Washington during the 2008–2009 school year.
>
> * * *
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED by this Court that the [IHSAA] and its agents, servants, employees, and attorneys, and all persons in active concert with the same, are hereby restrained and enjoined, pending the final determination of this action, from seeking any other direct or indirect means to accomplish its goal by attempting intimidation,

threats, penalties or procedures in such ways including, but not limited to:

(1) Directly or indirectly threatening to stop or cancel regular season play, sectional, regional or state championship basketball tournaments if Jasmine [ ] does not voluntarily dismiss or voluntarily vacate any injunction in her favor;

(2) Any direct or indirect actions or threats or penalties against [Washington], as the receiving school, for this or other matters related directly or indirectly to this matter, in a manner which is an attempt to have said school suggest the dismissal or vacating of the injunction, or to otherwise attempt to punish said school out of retaliation;

(3) Any attempt to enforce, implement or carry out in any manner, directly or indirectly, the decision of the IHSAA to the effect that [Jasmine] is ineligible to participate in interscholastic athletics at and on behalf of Washington [ ] for the period commencing with her enrollment at Washington [ ];

(4) Any and all direct or indirect threats, actions or charges against Jasmine [ ] or Washington [ ], or its employees or coaches, of any nature whatsoever, in any way arising out of the facts and circumstances of this matter regarding [Jasmine's] enrollment at Elkhart Memorial [ ] and transfer to and enrollment at Washington [ ], for the 2008–2009 school year; and

(5) Any direct or indirect actions, penalties, or threats against any school which is scheduled to compete or does compete against [Washington], as a direct or indirect means to penalize or retaliate against Washington [ ] or [Jasmine].

Appellant's App. p. 48.

The IHSAA argues that this injunction has "made Jasmine the Teflon athlete, since the IHSAA cannot enforce *any* of its eligibility rules as to Jasmine." Appellant's Br. p. 41 (emphasis in original). It also argues that the injunction eliminates its ability to enforce the Undue Influence Rule against Washington and its coaches.

■■■ As to Jasmine, we note that there is no evidence in the record whatsoever that Jasmine violated any IHSAA eligibility rules during the 2008–09 school year— or at any other time. Furthermore, Jasmine graduated from high school in May 2009 and is no longer participating in any high school athletics. Therefore, this argument is moot and it would serve no purpose to direct the trial court to spell out the relevant eligibility rules in the order.

As to Washington, the order prohibits the IHSAA from taking action against Washington or its coaches for conduct "arising out of the facts and circumstances" of Jasmine's transfer. Appellant's App. p. 48. Thus, to the extent that the IHSAA believes that Washington or its coaches have violated IHSAA rules with regard to other players, the IHSAA is not prevented from enforcing its rules.

As to the IHSAA's ability to enforce the Undue Influence Rule against Washington and its coaches for the events leading up to Jasmine's transfer, the trial court found that the IHSAA acted arbitrarily and capriciously in finding that Coach Scott had violated this Rule and in the way it applied this Rule to these parties, and we found that the trial court did not err in this regard.

Though the IHSAA protests that its decision concerned Jasmine's eligibility to

take part in athletics rather than Coach Scott and/or Washington's violations of the rules, the IHSAA *made* it a part of the underlying issues herein when it explicitly found that Coach Scott had violated the Undue Influence Rule as part of its order. Given that the trial court found that the IHSAA acted arbitrarily and capriciously in that regard, it is logical that the trial court would have deemed it necessary to prevent the IHSAA from taking further action against Washington and its coaches based on these facts. Therefore, we do not find that the injunction order was overly broad.

The judgment of the trial court is affirmed.

RILEY, J., concurs.

FRIEDLANDER, J., dissent with opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the Majority's conclusion that the trial court in this case correctly entered an injunction preventing the IHSAA from enforcing its eligibility determination. In my view, the Majority decision suffers the same flaw as did the trial court's—it employs an overzealous review that does not accord the IHSAA decision sufficient deference.

I begin by reiterating that we review an IHSAA decision such as this only for arbitrariness or capriciousness. *Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg,* 694 N.E.2d 222 (Ind.1997). Our Supreme Court has explained that this is "a narrow standard of review and the reviewing court may not substitute its judgment for the judgment of the IHSAA." *Id.* at 233. The ruling or decision under review will be deemed arbitrary and capricious " 'only where it is willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.' " *Id.* (quoting *Dep't of Natural Res. v. Indiana Coal Council, Inc.,* 542 N.E.2d 1000, 1007 (Ind.1989), *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990)).

With this in mind, I proceed to an examination of a part of our strictures on review that I believe the Majority, and the trial court before it, have failed to adhere to. Specifically, this pertains to the consideration of evidence. We have set out those principles and the restrictions on the powers of our court sitting in review of IHSAA decisions as follows:

We conclude that when reviewing IHSAA eligibility decisions, a trial court is limited to reviewing the record of the proceedings conducted before the IHSAA with respect to the factual determinations made by the IHSAA. *The trial court may receive new evidence only if such evidence pertains to matters concerning the IHSAA proceedings, or if it pertains to factual determinations made by the IHSAA and the failure to present such evidence to the IHSAA was not attributable to choice or inexcusable neglect.* The trial court's task upon review is the same as when reviewing an administrative agency's decision. The court may not reweigh evidence or judge witness credibility, but simply analyzes the record as a whole, including both the proceedings before the IHSAA and the proceedings before the trial court, to determine whether the IHSAA's findings were supported by substantial evidence. The trial court is not to try the case de novo or substitute its judgment for that of the IHSAA.

When reviewing the trial court's judgment with respect to factual determinations made by the IHSAA, our scope of review is the same as that applied by the

trial court. We examine the record of the proceedings before the IHSAA, together with any properly admitted, relevant new evidence presented to the trial court, to determine whether there is substantial evidence to support the IHSAA's findings. Both trial and appellate courts must accord great deference to IHSAA eligibility determinations. With respect to trial court determinations regarding the propriety of the proceedings conducted before the IHSAA, our review again is the same as that of the trial court.

*Indiana High Sch. Athletic Ass'n, Inc. v. Reyes,* 659 N.E.2d 158, 164 (Ind.Ct.App. 1995), *adopted in Indiana High Sch. Athletic Ass'n, Inc. v. Reyes,* 694 N.E.2d 249 (Ind.1997) (internal citations omitted) (emphasis supplied). I highlight the language in the foregoing excerpt because it delineates the place where I begin my analysis, i.e., the legitimacy of the evidentiary hearing conducted by the trial court.

Before rendering its decision, the IHSAA Review Committee conducted a hearing at which it received evidence. That evidence focused on the reason for Jasmine's transfer from Elkhart Memorial High School to South Bend Washington High School. Depending on the Review Committee's findings, Jasmine might be declared athletically ineligible for her senior year pursuant to one of several IHSAA eligibility rules. As ably set forth in the majority opinion, the resolution of this case boiled down to the question of whether athletics was a primary factor in the transfer. The record reflects that the Review Committee heard testimony and considered documentary evidence offered by the parties. Each side was given the opportunity to marshal and present its evidence, to explain its position, and to identify and offer justification for its desired outcome. Following the hearing, the Review Committee issued findings of fact and the con-

clusions based upon those findings. The Review Committee concluded that Jasmine's transfer was athletically motivated, based upon certain factual findings which I will detail below. It is at this point that the matter was appealed to the trial court for judicial review, in the form of a petition for preliminary injunction.

As set forth above, the trial court's review of IHSAA action is essentially the same as ours. I stress several key principles of that review. First, it is a deferential standard of review—arbitrary and capricious. *Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg,* 694 N.E.2d 222. Second, concerning the factual determinations made by the IHSAA, a trial court is limited to reviewing the record of the IHSAA proceedings. The trial court may receive new evidence about the facts of the case "only if . . . the failure to present such evidence to the IHSAA was not attributable to choice or inexcusable neglect." *Indiana High Sch. Athletic Ass'n, Inc. v. Reyes,* 659 N.E.2d at 164. Third, in reviewing the evidence, " 'the trial court cannot weigh the evidence and must uphold the organization's finding if it is supported by any substantial evidence.' " *Id.* at 163 (quoting *Terrell v. Palomino Horse Breeders of Am.,* 414 N.E.2d 332, 335 n.2 (Ind.Ct.App.1980)). In my opinion, the trial court in this case exceeded the limits of its review in conducting a new evidentiary hearing.

I wish to stress here that I do not object to the trial court's decision to hold a hearing on the Watsons' motion for preliminary injunction. I do not believe, however, that the receipt of new evidence was appropriate. With respect to the evidentiary facts upon which an IHSAA determination is based, per *Reyes,* a trial court may receive new evidence only when the party who wishes to proffer it demonstrates that it

was unable to present the evidence at the IHSAA proceeding. This is the only reasonable interpretation of the limitation "only if ... the failure to present such evidence to the IHSAA was not attributable to choice or inexcusable neglect" set out in our opinion, *see Indiana High Sch. Athletic Ass'n, Inc. v. Reyes,* 659 N.E.2d at 164, and adopted by our Supreme Court. This interpretation is consistent with the other condition under which a trial court may receive new evidence, i.e., when the evidence pertains to the IHSAA hearing itself, in that both evince a clear purpose of ensuring that the appellant had a fair hearing before the IHSAA.

In the instant case, in her Verified Complaint For Injunctive Relief, For Temporary and For Permanent Injunction, Jasmine did not allege that the hearing she received before the Review Committee was unfair. To the contrary, she claimed that "[t]he evidence submitted ... at the hearing, was probative evidence, and conclusive evidence, that Jasmine's transfer ... was not athletically motivated or based on undue influence." *Appellant's Appendix* at 78. Moreover, Jasmine asked the trial court "to declare that *upon the evidence submitted at the hearing of the Review Committee on October 9, 2008,* Jasmine has full eligibility[.]" *Id.* at 85 (emphasis supplied). Therefore, in my view, the trial court erred in receiving any evidence at the hearing on Jasmine's motion to review the merits of the Review Committee's determination.

I turn now to an application of the first and third principles set out above, both of which require that courts review the Review Committee's findings only for arbitrary and capricious action and forbid reweighing the evidence or re-assessing witness credibility. In so doing, I reiterate that we may consider only the evidence that was presented in the Review Committee hearing. The Review Committee entered exhaustive findings of fact on the issues of the Watson family finances and the contact between Jasmine, her family, and various coaches and school personnel involved from both Elkhart Memorial and South Bend Washington. Beginning with the latter, there was testimony that Jasmine's family was not pleased with her situation vis-à-vis the Elkhart Memorial girl's basketball team. Jasmine had stated to her teammates prior to leaving Elkhart that she was going to use her grandmother's South Bend address so she could play at South Bend Washington. Ultimately, Jasmine admitted to Fielstra, her Elkhart Memorial coach, that Mo Scott, South Bend Washington's coach and Jasmine's summer AAU coach, was "always asking her when she would be coming to South Bend Washington" and "was always trying to get her to go to South Bend Washington and even introduced Jasmine to the younger South Bend Washington players and telling them that Jasmine was coming to South Bend Washington." *Id.* at 698.[5]

---

5. I note here the Majority's conclusion that Coach Mo Scott's persistent attempts to persuade Jasmine to transfer, which Jasmine claimed happened "all the time ... [e]very time I'm over there", *Appellant's Appendix* at 293, did not constitute undue influence because "[n]o illicit offers were made, no bribes extended[.]" Op. at 754. "Illicit" and "bribe" denote illegal activity. I cannot agree that a finding of undue influence must be premised upon illegal behavior. To the contrary, the sort of persistent pressure that Jasmine described to others easily suffices. I note also that the Majority dismisses Coach Scott's touting of the ready prospect of a state championship should Jasmine transfer as "some friendly boasting", *id.,* and not an inducement within the meaning of the Undue Influence Rule. Such evinces a fundamental misunderstanding of the psyche of the typical high school athlete, for whom a state championship would almost certainly be of the ut-

Coach Fielstra testified that he was informed that Jasmine's mother stated sometime in the summer before her senior year that one of the conditions to her remaining at Elkhart Memorial was that Elkhart Memorial needed to "get the ball more" to Jasmine. *Id.* at 699. Previously, Jasmine's mother had threatened to move Jasmine from Elkhart Memorial to South Bend Washington because Elkhart Memorial would not help pay for an ad for Jasmine in the Indiana All–Star Magazine. South Bend Clay coach Steve Scott indicated he had spoken with Jasmine's grandmother at her request. She told him they were checking out the Clay basketball program and looking for a place for Jasmine to play basketball because Elkhart Memorial was not getting her the ball enough and because they were not treating her right. Elkhart Memorial assistant track coach Tami Gregory indicated that Jasmine's mother had told her that South Bend Washington was pressuring Jasmine to come to Washington to play basketball.

There was more evidence, indeed significantly more, both that Jasmine's family was dissatisfied with her situation on the basketball team at Elkhart Memorial and that South Bend Washington was recruiting Jasmine to come there to play basketball. But, the foregoing is sufficient for my purpose of illustrating that the Review Committee's decision had a solid evidentiary basis. Upon what basis did the trial court grant the injunction and, in effect,

reverse the Review Committee's decision in the face of this considerable evidence? In my view, it did so by erroneously conducting its own independent inquiry into the matter, which included receiving new evidence, rejudging witness credibility, independently weighing the evidence presented at both hearings, and drawing its own independent conclusions.[6] This was not merely *tantamount* to a trial de novo, it *was* a trial de novo. As indicated previously, our Supreme Court has "emphatically" rejected such close scrutiny of IHSAA eligibility determinations. *Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg,* 694 N.E.2d at 231.

The appropriate deferential review of the Review Committee's determination in this case would consider only the evidence presented at the hearing before the Review Committee. That evidence included everything set out in the preceding paragraphs with respect to South Bend Washington's recruitment of Jasmine to play there, and more. In my view, this evidence was more than sufficient to sustain the Review Committee's determination of ineligibility. Apparently, the Majority, like the trial court before it, hesitates to designate it as evidence at all, i.e., "much of the 'evidence' relied upon by the IHSAA . . .", before dismissing it as unsubstantiated hearsay and double hearsay. Op. at 752. Our court has indicated that the normal proscriptions against hearsay do not apply in an administrative proceeding.

most importance. Indeed, Jasmine told an Elkhart Memorial teammate prior to leaving that she was considering transferring to South Bend Washington because she wanted a state basketball championship ring before she graduated. Moreover, the Majority does not mention that a different Elkhart Memorial teammate overheard Coach Scott tell Jasmine on more than one occasion that if she transferred to South Bend Washington, she "would have a better chance of being recruited by the

elite colleges." *Id.* at 444. Touting the greatly enhanced possibilities of a state basketball championship and an athletic scholarship to an elite university are not only inducements to a high school athlete, but powerful ones at that.

6. The terms "independent" and "independently" here mean essentially without regard whatsoever for the Committee's findings and conclusions.

In fact, an agency review board "can admit all hearsay evidence without fear of automatic reversal." *Kriss v. Brown*, 180 Ind. App. 594, 390 N.E.2d 193, 203 (1979). Granted, if a proper objection is interposed at the hearing and preserved on review and the evidence does not fall within a recognized exception to the Hearsay Rule, then a decision may not be based solely upon such hearsay. On the other hand, if not objected to, hearsay may form the basis for a decision. *Kriss v. Brown*, 180 Ind.App. 594, 390 N.E.2d 193 (applied when reviewing an eligibility determination made by the IHSAA). Jasmine did not object to any evidence on hearsay grounds.

In making these observations concerning the use of hearsay evidence in an IHSAA eligibility proceeding, I do not believe I am laboring under any misconceptions about what the trial court did, or about the gist of the Majority's views regarding what the trial court did. The Majority asserts that the trial court did not exclude the evidence on the ground that it was hearsay, it merely found said evidence to be incompetent and rejected it on *that* basis. The Majority concludes, "the trial court was well within its rights to find the type of hearsay and double hearsay evidence relied upon by the IHSAA to be incompetent evidence." Op. at 753 n. 2. My examination of the record of the IHSAA proceeding in this case reveals that the type of hearsay and double hearsay evidence relied upon in the IHSAA's ruling was run-of-the-mill hearsay. There was nothing inherently incredible or unbelievable about *what* the proponents of the hearsay claimed to have heard. Thus, I am left to conclude that it was deemed incompetent by the trial court merely because it was hearsay, and rejected on that basis. Indeed, the Majority acknowledges as much, and approves of the trial court's action. What emerges is a rule that says

hearsay evidence is permitted in an administrative proceeding such as that before the IHSAA here, but may be rejected because, as a matter of law, *as hearsay*, it is incompetent. It is unclear to me how this holding squares with the Majority's statement, "We have not ruled on—and were not asked to rule on—whether the trial court appropriately excluded evidence because it was hearsay." *Id.* What is the practical difference between excluding evidence on the basis that it is hearsay and deeming it incompetent on the basis that it is hearsay? None that I can detect. The result is the same either way and the IHSAA might just as well consider such evidence meaningless in all future proceedings because trial courts will be authorized by this decision to deem hearsay evidence incompetent merely because it is hearsay.

I reiterate that Jasmine did not object to the evidence and that, if not objected to, hearsay may form the basis for a decision. Thus, we are left with this: There was competent evidence at the hearing before the Review Committee that South Bend Washington had been actively recruiting Jasmine, that Jasmine and her family were dissatisfied with the way she was utilized on the Elkhart Memorial basketball team, and that she had threatened to move to another school where the basketball situation would be more to her and her family's liking. I understand that Jasmine, her mother, and South Bend Washington's basketball coach all denied doing or saying many of the things attributed to them by the evidence upon which the Review Committee ultimately reached its determination that Jasmine's transfer was motivated primarily by athletics. In granting the injunction and effectively reversing the IHSAA's eligibility determination, the trial court not only reweighed the evidence, but re-assessed the credibility of key witnesses such as Jasmine, her mother, and Coach

Scott of South Bend Washington. There can be no other basis that I can perceive for rejecting the Review Committee's conclusion that Jasmine's transfer was primarily athletically motivated.

At this point, I feel compelled to address the matter of the Watson family financial circumstances. They were relevant in this case because the Watsons offered them as the sole motivation for the family's move from Elkhart Memorial to South Bend Washington. It is clear to me that the trial court focused on those circumstances in reaching the conclusion that the injunction should be granted. The first three sentences of the Majority's opinion reflect that this captured the lion's share of the Majority's attention as well. Indeed, they are compelling, and I certainly am not unsympathetic to the family's struggles. I think, however, the compelling nature of those matters diverted the trial court's, and the Majority's, attention somewhat from the main issue before the Review Committee. The Majority invites the reader to step away from the trees and observe the forest. The forest in this case is described by the Majority in sympathetic, even compelling, terms—a single moth-

er struggling to pay bills on a reduced salary, a mother unable to find a suitable home in Elkhart, but ultimately able to secure a residence within her means, in a safe location, "and close enough to her extended family that they could lend much needed support to the struggling family." Op. at 756. Leaving aside for the moment the fact that several of the circumstances thus recited were not firmly established by the evidence (including most notably that the Watsons simply could not have found suitable housing in or near Elkhart), I would respectfully suggest that the Majority's gaze is fixed upon the wrong forest.

Writing rhetorically, the Majority asks, "what does the IHSAA believe [Jasmine's mother] should have done?" *Id.* at 756. The Majority then provides five alternatives from which it asks the IHSAA to choose, had it been in Valerie Watson's position. Four of those options were clearly bad, at least as constructed by the Majority, and one was impractical. The clear implication is that moving to South Bend was the only viable option open to the Watsons. I disagree that such accurately represents [7] or describes the entire

7. I note, as just one example of the way in which some of these dire-sounding alternatives are perhaps mis-cast, a letter submitted for consideration in the hearing before the Review Committee by one A.J. Rodino. Rodino stated that he had a five-bedroom home that he would be willing to rent to the Watsons for lower rent and a lower deposit "so [they] could afford the house." *Appellant's Appendix* at 219. Coach Fielstra told Valerie about the home, but she did not contact Rodino and follow-up. When Coach Fielstra asked whether she had looked at the home, she told him it was not big enough. It was not until the hearing before the Review Committee that Valerie claimed the reason she rejected Rodino's property was because it was located near a liquor store. This discrepancy in the reasons given for rejecting the possibility of moving into Rodino's rental, together with much other evidence on the subject of

her housing search in Elkhart, permits a reasonable inference that not all housing possibilities in Elkhart Memorial were "too small, too expensive, or situated right next to a liquor store" and thus rejected on only those bases. Op. at 756.

I note also that the Majority upholds the validity of the injunction at least partially on grounds that Elkhart Memorial was guilty of what it labels as "blatant" reverse recruiting, the point being that to take action on South Bend Washington's improper actions while ignoring similar transgression on the part of Elkhart Memorial constituted arbitrary and capricious action on the Review Committee's part. *Id.* at 755–56. I cannot agree with the Majority's implicit assertion that the Review committee acted illogically or inconsistently ("had the IHSAA been acting consistently and logically, it would not have explicitly stated

universe of choices available to Valerie Watson as she approached the summer before Jasmine's senior year. Regardless, I respectfully suggest that the IHSAA is not in this or any case in the business of making such life decisions on behalf of student-athletes' families, nor is it in the business of evaluating the wisdom of those choices after a family makes them. Rather, its task "is to encourage, regulate, and give direction to wholesome amateur interschool athletic competition between its member schools." *Indiana High Sch. Athletic Ass'n, Inc. v. Martin,* 765 N.E.2d 1238, 1239 (Ind.2002). Integral to regulating the competitive landscape among the more than 400 member schools of the organization is Rule 19–4 which, in order to "preserve the integrity of interschool athletics and to prevent or minimize recruiting, proselytizing and school 'jumping' for athletic reasons, *regardless of the circumstances*" limits eligibility of student athletes who transfer for primarily athletic reasons or as a result of undue influence. *Appellant's Brief* at 4 n. 4 (emphasis supplied). It is this purpose (i.e., to encourage, regulate, etc.), the IHSAA member schools, and the integrity of the athletic competition among them, that represent the metaphorical forest upon which the IHSAA must focus its attention.

The Review Board's decision would perhaps have been easier to embrace had the family's financial circumstances been less emotionally compelling. But the question of motivation for the transfer of schools was not necessarily a function of whether Valerie established that her family was in dire financial straits in the months leading up to the commencement of Jasmine's senior year, at least not on the facts established by the evidence in this case. Rath-

er, the evidence at the hearing established both that the family was experiencing serious financial difficulties *and* that Jasmine was being recruited by South Bend Washington and Jasmine's basketball endeavors were a significant factor in the transfer from Elkhart Memorial to South Bend Washington. Put another way, the Review Committee was not bound to find that athletics was not a significant factor in the transfer if it believed the family was experiencing financial hardship. This was not an either-or proposition.

In summary, there was considerable evidence that Jasmine was recruited by South Bend Washington and that Valerie's decision to transfer Jasmine from Elkhart Memorial to South Bend Washington was primarily motivated by athletics. Some of that evidence I have documented, much of it I have not. The Majority wrongly rejects much of this evidence as hearsay and condones the trial court's error in conducting an impermissibly stringent level of review, which included receiving new evidence, reweighing evidence, and re-assessing witness credibility. Moreover, I believe the Majority goes astray in diverting its attention from the main issue, i.e., the evidence of South Bend Washington's recruitment of Jasmine and the evidence that Jasmine's basketball endeavors were a prime consideration in Valerie's decision to move to South Bend and to have Jasmine transfer schools, and focusing instead on the family's financial plight. Absent the considerable evidence of improper recruitment and parental inclination to make Jasmine's athletics a prime factor in deciding what school she should attend her senior year, the evidence of the family's financial problems would

---

...", *id.* at n. 4) in failing to sanction Elkhart Memorial's actions. That matter simply was

not before the Review Committee at the time.

very probably have led the IHSAA to conclude that Jasmine would have been eligible to play varsity sports wherever the family moved. In the face of that considerable evidence, however, I fear the matter of financial hardship, real though that hardship was, has become a red herring, at least with respect to reviewing the issue the Review Committee was called upon to decide. Under the IHSAA eligibility rules as I understand them, and as they have been consistently enforced by the IHSAA, compelling financial hardship, or any other personal difficulty for that matter, does not excuse the forbidden act of making athletics a primary consideration in an IHSAA student-athlete's transfer from one high school to another.

In the end, we must ask ourselves, was the Review Committee's decision that Jasmine's transfer to South Bend Washington was primarily motivated by athletics " 'willful and unreasonable, without consideration and in disregard of the facts or circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion' "? *Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg by Carlberg*, 694 N.E.2d at 233 (quoting *Dep't of Natural Resources v. Indiana Coal Council, Inc.*, 542 N.E.2d at 1007). In my view, the answer is, emphatically, no. Thus, the Watsons failed to demonstrate a probability of success on the merits of their claim for relief. I would reverse and vacate the injunction in its entirety.

